GRISWOLD, Respondent, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*December 3 — December 23, 1885.*

*Railroads: Negligence: Starting train before person not a passenger had gotten off.*

A person not a passenger got upon a railroad train at a station for the purpose of assisting his wife, who was a passenger, therefrom. His wife had already left the train. The train suddenly started while he was upon the platform of a car, and he was thrown therefrom and injured. Before the train started all passengers for that station had gotten off, and those waiting to take the train had gotten on, and the mail, express matter, and baggage had been put off. How long the train stopped, and whether any signal of starting was given, were matters in dispute. None of the employees of the railroad company knew that he expected to go upon the train or that he had done so; and a brakeman knew that his wife had gotten off the train and needed no assistance. *Held,* that the company was not liable for the injury.

APPEAL from the Circuit Court for *Outagamie* County. Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant's servants. The facts are stated in the opinion. The jury

found a special verdict to the effect (1) that the plaintiff boarded the defendant's passenger train at the time complained of only for the purpose of meeting and assisting his wife, who was a passenger thereon, and not as a passenger; (2) that while upon the steps of the car platform, in the act of leaving the train, he was thrown therefrom by the sudden and violent starting and jerking of the train; (3) that he did not voluntarily step or jump from the car upon the depot platform while the train was in motion; (4) that he was not warned by the brakeman on the train not to step off the car while the train was in motion; (5) that in leaving the car the plaintiff did not fail to exercise ordinary care for his own safety, which contributed to the happening of the injury; (6) that the train did not stop a reasonable length of time; (7) that the plaintiff was injured by a fall from the train of the defendant; (8) that the plaintiff was not guilty of a want of ordinary care in boarding the train, which contributed to the happening of the injury; (9) that the defendant was guilty of a want of ordinary care in starting the train; and (10) that such want of ordinary care on the part of the defendant was the proximate cause of the injury complained of. The jury also assessed the plaintiff's damages at $1,000. Motions by the defendant for judgment in its favor upon the special verdict, and for a new trial, were denied, and from the judgment entered on the verdict in favor of the plaintiff the defendant appealed.

For the appellant there was a brief by *Jenkins, Winkler, Fish & Smith,* of counsel, and oral agreement by *Mr. Jenkins.* They argued, *inter alia,* that in getting upon the train the plaintiff was a mere trespasser. *Gardner v. N. H. & N. R. Co.* 51 Conn. 143; *Batchelor v. Fortescue,* 49 L. T. R. (N. S.), 442. A less degree of care is due to a trespasser than to a licensee. *Delaney v. M. & St. P. R. Co.* 33 Wis.

67; *Davis v. C. & N. W. R. Co.* 58 id. 662. And a less degree of care is due to a licensee than to one under invitation. *Sweeney v. O. C. & N. R. Co.* 10 Allen, 374; *Hogan v. C., M. & St. P. R. Co.* 59 Wis. 139, 149, 150; *Cahill v. Layton,* 57 id. 600; *Corby v. Hill,* 4 C. B. (N. S.), 556; *Hounsell v. Smyth,* 7 id. 731; *Barnes v. Ward,* 9 C. B. 392; *Hardcastle v. S. Y. R. & R. D. Co.* 4 Hurlst. & N. 67; *Bolch v. Smith,* 7 id. 736; *Vanderbeck v. Hendry,* 34 N. J. Law, 467; *Nicholson v. Erie R. Co.* 41 N. Y. 525. If it be conceded that the plaintiff was a licensee the defendant was not guilty of any want of ordinary care under the circumstances. The train was operated and the business was conducted in the usual manner, and there were no special circumstances calling for more particular care. *Mitchell v. C. & G. T. R. Co.* 51 Mich. 238; *Vanderbeck v. Hendry,* 34 N. J. Law, 472; *Davis v. C. & N. W. R. Co.* 58 Wis. 657; *Hogan v. C., M. & St. P. R. Co.* 59 id. 150; *Lucas v. T. & N. B. R. Co.* 6 Gray, 70; *Sutton v. N. Y. C. & H. R. R. Co.* 66 N. Y. 248.

For the respondent there was a brief by *William Kennedy* and *Gabe Bouck,* and oral argument by *Mr. Kennedy.* To the point that the plaintiff had a right to go upon the train to meet and escort his wife, they cited Thompson on Carriers of Passengers, 49; 2 Rorer on Railroads, 1130, 1131; *Doss v. M., K. & T. R. Co.* 59 Mo. 27; *Langan v. St. L., I. M. & S. R. Co.* 72 id. 392; *Hicks v. Pac. R. Co.* 64 id. 429; *Gillis v. Penn. R. Co.* 59 Pa. St. 129; *McKone v. M. C. R. Co.* 51 Mich. 601; *Lucas v. N. B. & T. R. Co.* 6 Gray, 64; *Gautret v. Egerton,* L. R. 2 C. P. 371; *Holmes v. N. E. R. Co.* L. R. 4 Exch. 254; *Slattery v. Dublin, W. & W. R. Co.* L. R. 3 App. Cas. 1155; *S. C.* Ir. Rep. 8 C. L. 531; 10 id. 256. The train must stop a reasonable time. 2 Rorer on Railroads, 965, 968; Wood on Railways, 1123; Shearm. & Redf. on Neg. sec. 276; *Keller v. S. C. & St. P. R. Co.* 27 Minn. 178.

ORTON, J. The facts in this case are substantially and briefly as follows, according to the testimony of the plaintiff, the respondent on this appeal, and other witnesses: The plaintiff went to the depot at Appleton on the morning of the 16th day of February, 1883, about five minutes before the train of the appellant company arrived, at about 4 o'clock and 32 minutes, to meet his wife, whom he expected would be on the sleeper of said train on her return from New York, and to assist her off the train. The morning was dark and foggy. When the train arrived he got on the first sleeper towards Green Bay and asked the porter of the sleeper if there was a lady to get off, and he said, "May be she is in the next car," and he then walked rapidly out of the car, and as he reached the platform of the car the train suddenly started, and he was thrown off and dragged along by the train, and much injured. His wife, Mrs. Griswold, had got off the train before he went on it, and her baggage had been taken off. The evidence was undisputed, that all the passengers who were to go on said train at that point had gone aboard, and all those who were to stop at that depot had got off, and the mail had been exchanged as well as the express matter, and all the baggage had been taken off, and everything done necessary to be done, so far as the passengers and the business of the company at that place was concerned. How long the train stopped was a matter in dispute on the trial, and whether any signal of starting was given. Neither the conductor, nor any brakeman, nor the engineer, nor any one else having anything to do with the running or management of the train, knew, or had information, that the plaintiff had gone aboard of the train, or that he was expected to go aboard of it at that time, for any purpose, and the brakeman at least knew that his wife was off the train and needed no such assistance.

Such being the facts, the vital question in the case is

whether the company owed to the plaintiff the duty of keeping the train standing still just at that time long enough so that the plaintiff could have safely left the train. In other words, was the plaintiff placed in such a relation to the company that it was the absolute duty of the company to so withhold the train for him to get off safely at that time? It is not worth while to speculate in such a case as to whether the plaintiff was a trespasser or licensee, or was on the train by invitation, but it may be conceded that he had the right to board the train for the purpose stated. He was not a passenger and the company owed him no duty as such. The company are charged with this single and only act of negligence, namely, that it started its train before the plaintiff could safely step down out of it, and thereby caused him to fall off, and to be so dragged along to his personal injury. The company certainly would not be *absolutely* liable for such an act in respect to the plaintiff unless he was a passenger, of whose presence on the train, and of whose getting on and off, it would be presumed to have notice, and to whom it is bound by contract as well as by duty. Neither the company, nor its employees and servants, in the management of the train, had any notice whatever that the plaintiff was anywhere about the train. Must they not be placed in fault before they can be charged with liability? Must they not know what it is their duty to do in such an emergency, by a knowledge of the emergency itself, before they can be charged morally or legally with a breach of such duty? Negligence, unless constructive and absolute, must depend upon the circumstances of the case, and those circumstances must be such as to create a duty which can be neglected or violated. These propositions would seem to be axiomatic and self-evident. The employees, in the management of this train, knew of nothing which made it their duty to delay the train any longer than to perform their usual duties at

that depot,— all of which had been performed. Had any of them been informed, or had any reason to know, that the plaintiff was on board one of the cars for the purpose stated, then the company would have owed him the duty to have delayed their train a reasonable time for him to get off. But none of them knew any such thing, or had reason to know it; but, on the contrary, some of them knew that the wife of the plaintiff was already off the train, and that there was no occasion for the plaintiff to go aboard to help her.

The duty of the company in such a case is *relative*, and not *absolute*. It seems to me that the law would work the grossest injustice if it could create a liability of the company in such a case. It would seem to be the first duty of the person entering a train for such a purpose to notify some one in its management of his presence, business, and purpose, so as to create some relation to the company, and make it its duty to care for him. The principle is elementary, in all such cases, that the liability of the company to a person injured by being in such a place of danger depends upon the company's failure to use ordinary care to avoid injuring him after becoming aware of his danger. Shearm. & Redf. on Neg. 36. Even a passenger must give the company notice when he leaves his proper place on the train, in order to create a duty in the company to care for him out of such place. 2 Wood on Railways, 1134, 1135. Where a person not a passenger escorted a lady friend onto the cars, and to find her a seat, returned to the platform, and was thrown therefrom by the motion of the train and injured, he was not allowed to recover, and one reason given was that no one of the employees had any notice of his being on the train. *Cent. R. Co. v. Letcher*, 69 Ala. 106. The court says, in the opinion: " All who were in charge of it [the train] were ignorant that the plaintiff was upon it, and without notice or request to any of them to slow or

stop the train," etc.   In *Keller v. S. C. & St. P. R. Co.* 27 Minn. 178, the duty of holding a train long enough for a passenger to get off, is made to depend upon the presumption that the company knew, and upon the implied notice, that the passenger wanted to get off at that place.   In *Gillis v. Penn. R. Co.* 59 Pa. St. 129, the duty of the railroad company was made to depend upon the business relation implying *privity* with the company of the person not a passenger.   The case of *Doss v. M., K. & T. R. Co.* 59 Mo. 27, was made to depend upon the neglect of the company to stop at the proper place, and long enough for the lady passenger and her child to get on or off the train, so that her lawful escort was injured by getting off.   Having notice of the passenger, the company had the same notice of her escort.   The case, as it was, was an extreme one, and in conflict with the current of authority upon the question; but it does not dispense with notice to the company of the presence of the stranger, and the company was guilty of negligence towards its passenger by starting too soon.   In *Sutton v. N. Y. C. & H. R. R. Co.* 66 N. Y. 248, it was held that the implied notice of the deceased being on the track, because it was common for persons to cross the track at that place, was not sufficient to make the company owe him any duty to set the brakes or otherwise fasten the cars.   In *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626, the liability is placed upon the implied notice to the switchman that the little girl was on the track, because he might have seen her if he had looked, and that it was his duty to have looked to see if any one was on the track.   In *Gautret v. Egerton*, L. R. 2 C. P. 374, there was an implied notice by the escort accompanying the passenger, if not actual notice.   In this case the plaintiff was alone, and on the cars *clandestinely*, without notice to the company, express or implied.   But it would seem unnecessary to accumulate authorities to such an obvious principle.

In this court there have been numerous cases made to depend upon notice to create duty and liability, where such duty and liability were merely *relative* and not absolute, as in this case. Why should the managers of the train have held it there longer than to do the regular business at that place *for this plaintiff* to get off, when they did not know and had no reason to know that he was on the train? It would be unreasonable and reckless to hold that the company are required to stop their trains just so long at every depot, and that everybody has the right to depend upon the strict performance of this duty. If the train be behind time, that time must be made up or some collision might occur. The time must depend upon the business they are required to do safely with the persons to whom the company owes any duty. Beyond that there is no reason. We regret to reverse the judgment in a case where the questions have been so fully submitted to the jury; but this vital question does not seem to have been specially passed upon by the jury, and it is too important to be allowed to pass unheeded in such a case, where the decision will form a precedent for future cases.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.