Louisville and Nashville Railroad Company v. Espenscheid.

---

## LOUISVILLE & NASHVILLE RAILROAD COMPANY v. ESPENSCHEID.

[No. 2,163. Filed May 21, 1897.]

RAILROADS.—*Alighting From Moving Train.—Negligence.*—Where a railroad company stops its train at a station for about three minutes, it is not liable to one who went upon the train with his daughters to find seats for them, for an injury caused by his attempting to alight after the train had started, the servants in charge of the train having no knowledge of his intentions. *pp. 559–569.*

SAME.—*Alighting From a Moving Train.—Contributory Negligence.*— In an action against a railroad company for personal injuries sustained by plaintiff while in the act of leaving a train at a passenger station, a special verdict finding that plaintiff was not on the bottom step of the car when the train started, and that the train had moved about six feet and was moving when plaintiff stepped off, and that there was no sudden jerking of the train, shows that plaintiff was guilty of contributory negligence. *pp. 569–573.*

From the Posey Circuit Court. *Reversed.*

*Alex. Gilchrist* and *C. A. De Bruler*, for appellant.

*G. V. Menzies*, for appellee.

WILEY, J.—The appellant owned and operated a railroad from East St. Louis, Illinois, to Evansville, Indiana, passing through the city of Mount Vernon, in Posey county, Indiana. At the last named place, the appellant maintained a station and platform for receiving and discharging passengers, and for other necessary purposes connected with the operation of its road. On the 15th day of October, 1894, the appellee purchased of the appellant's local station agent, two tickets for his two daughters, between the cities of Mount Vernon and Evansville, and accompanied them to the station at Mount Vernon, for the purpose of assisting them in getting on the train and in securing seats for them. He went into the ladies' car, attached to said train, with his two daughters, carrying some packages for them, but on getting into said car found that it was crowded with passengers, and that there was no place for them to be seated. He then conducted his daughters to the smoking car, and just as he returned from the smoking car onto the platform the train started up and he undertook to get off the train while in motion, and in so doing fell and sustained some injury. The acts of negligence charged against the appellant in the complaint were, that it was a rule and regulation of the company that the train upon which his daughters took passage, after its arrival at said station, was to remain at said station for a period of three minutes; that the conductor of said train knew that the appellee went upon said train for the purpose of assisting his daughters in procuring seats, etc., and that when he started to get off of said

train the servants of the appellant then in charge of, and operating said train, saw him and knew he was going down the steps of said car for the purpose of leaving the train; that while appellee was descending from the smoking car and was seen by said servants, the train was carelessly and negligently, and without warning to him, started forward before the proper time and while the plaintiff was in the act of stepping from the lower step of said smoking car to the platform of the station; all of which was seen and known by the servants of the appellant; that the servants of appellant then suddenly and carelessly and negligently increased the speed of said train to a high rate, which careless and sudden starting of the train and the sudden and careless increase of its speed threw appellee with great violence on the platform, to his injury, etc.

The complaint further contains the averment that the injury to the appellee was wholly without any fault or negligence on his part.

The case was put at issue by a general denial, tried by a jury, and a special verdict returned. Both appellee and appellant moved the court for a judgment in their favor, respectively. The appellee's motion for judgment was sustained and the appellant's motion overruled, and these rulings of the court are assigned as error.

The facts found and stated in the special verdict, so far as they are material to the decision of the case, are as follows: That there was no regulation or rule of appellant that its passenger train should stop at Mount Vernon for any specified length of time; that at the time stated in the complaint, the train upon which appellee's daughters took passage stopped at said station about three minutes; that after all the passengers had alighted from said train, and after all

Louisville and Nashville Railroad Company v. Espenscheid.

the passengers who desired to take passage on said train had got on at said station, the train remained at said station a very short time while the servants of appellant were engaged in handling baggage; that the conductor had knowledge of the fact that the appellee went upon said train at said station for the purpose of assisting his daughters and securing for them seats; that the appellee did not say anything to the conductor as to whether or not he intended to remain on said train at that time; that before said train started from said station the conductor gave the usual signal to start; that at the time of giving said signal, the conductor was on the station platform between the bay window of the station and the baggage car; that at the time he did not see the appellee; that he had no knowledge that the appellee was about to alight from the train. We quote interrogatory 12 and the answer thereto in full: "12. Did the flagman, engineer, fireman or porter or baggageman upon the defendant's train at the time in question, have any notice or knowledge that the plaintiff was about to alight from said train at the time such train was started; if so, which one of said servants had such notice or knowledge? Answer. The flagman could have seen the plaintiff." The verdict further finds that the train was in motion before the appellee descended the steps of the car, and before he went to step off therefrom; that before appellee alighted from said train, some one called to him and warned him not to get off, but that he did not hear it; that before the appellee attempted to step off the train it had moved about six feet.

As is usual in such cases, two sets or forms of interrogatories were submitted to the jury, and each interrogatory in each separate set was numbered con-

secutively. We have given above, all the material facts in one of the sets or forms of special verdict, and, without aiming to repeat, we now set out such facts in the other set or form as we deem necessary and as are pertinent, as follows:

"3. Was the plaintiff injured by being thrown or jerked off a passenger train of the defendant at Mount Vernon, Indiana, on the 15th day of October, 1894? Ans. His action of stepping, coupled with the motion of the train, caused him to fall.

"20. Did the plaintiff immediately, after seeing his daughters in the smoking car, start to leave the train? Ans. Yes.

"22. Was the train standing still when plaintiff started to leave the train? Ans. Yes.

"23. Was the plaintiff on the bottom step of the smoking car before the train started to move? Ans. No.

"24. Was the train started ahead when plaintiff was on the bottom step of the smoking car? Ans. It started before he was on the bottom step.

"25. Was the train started ahead suddenly while plaintiff was in the act of stepping from the bottom step of the smoking car to the platform of the station? Ans. No.

"26. Did the conductor or brakeman of the train see the plaintiff when he was going down the steps of the smoking car? Ans. The brakeman could have seen him.

"27. Did the conductor or brakeman, while the train was standing still, see the plaintiff on the bottom step of the smoking car? Ans. No.

"28. Was the signal to start the train given when the plaintiff was on the bottom step of the smoking car? Ans. No.

"31. Was the plaintiff warned that the train was going to start before he started to step from the bottom step of the smoking car to the platform? Ans. Yes, but he did not hear him.

"32. Was plaintiff jerked off the train as he was in the act of stepping from the bottom step of the smoking car to the platform of the station? Ans. His action and the motion of the train caused him to fall.

"34. Did the conductor see the plaintiff when the signal was given to start the train? Ans. No.

"35. Did the brakeman see the plaintiff when the signal was given to start the train? Ans. Yes.

"36. Did the sudden starting of the train when plaintiff was in the act of stepping from the lower step of the smoking car to the platform jerk or throw plaintiff with violence on the platform? Ans. No."

To entitle the plaintiff to recover, it was necessary for him to establish negligence on the part of the appellant as charged in his complaint, and a freedom from fault or negligence on his part. If the facts found by the jury fail to establish either proposition, then it was error for the court to render judgment on the verdict in favor of the appellee.

When the appellee went upon appellant's train under the conditions and circumstances as alleged in the complaint, and shown by the special verdict, the appellant owed him at least the duty of exercising ordinary or reasonable care. As to whether or not he was entitled to the same rights, and the appellant owed him the same duty, as a passenger, under such conditions, there is some conflict in the authorities.

In his work on railroads, Judge Elliott says: "There is some diversity of opinion as to whether one who enters a train for the purpose of assisting a passenger is to be regarded as a passenger and there are cases which seem to hold that such a person is a passenger.

We are unable to assent to this doctrine as broadly held by some of the cases, for it seems to us that the extraordinary duty of a carrier to a passenger, is not, as a general rule, owing to such a person." Elliott on Railroads, section 1578.

In the case of *Evansville, etc., R. R. Co.* v. *Athon*, 6 Ind App. 295, it was held, that where a father assisted his invalid daughter on the cars at a station, with the agreement and understanding with the company that the cars would stop long enough to place his daughter thereon and to alight therefrom in safety, the relation of carrier and passenger existed between the company and the father, while the father was assisting his daughter thereon and departing therefrom.

In the case of *Louisville, etc., R. R. Co.* v. *Crunk*, 119 Ind. 542, it was held that where a passenger was so sick and enfeebled as to make it necessary for assistants to carry him from a station to a seat in the train upon which he had secured passage, the railroad company having contracted to carry him with the knowledge of his condition, is bound to allow him the required assistants, and is under obligation to stop the train long enough to afford the persons aiding such passenger, although their services are voluntarily offered, a reasonable opportunity to leave the train, the same as if they were passengers. It was further held in the case last cited, that where the train was slowly started before such assistants had had a reasonable time to get off, at a rate of speed so slow as to enable them to alight in safety, but after they have reached the platform of the car and while in the act of alighting, the speed is so suddenly and greatly increased through the negligence of the trainmen as to throw him off and injure him, the company was liable.

Conceding, without deciding the question, that appellant owed appellee the same duty that it owed to a

passenger, under the circumstances and conditions which he entered appellant's train, we are unable to see upon what theory, under the facts found, the appellant can be held liable. The appellant certainly did not owe appellee a higher or greater duty than it did a passenger. It is settled law, by an unbroken line of authorities, that it is the duty of a railroad company, engaged in transporting passengers, to stop its trains at stations or other places where passengers are received and discharged, a sufficient length of time to allow all passengers to alight therefrom, who so desire, or enter therein, in safety.

The law does not contemplate, and it would be unreasonable to hold, that a railway company shall establish or fix any general rule as to the time it will stop its trains for the purpose of discharging and receiving passengers. Such details in the management and running of railway trains must be controlled and adjudged by the conditions, circumstances and surroundings in each particular instance. If there is but one passenger to leave a train, and one to enter it at any particular station, it is evident, that for the protection, care and safety of such two passengers, it would not be necessary to stop such train as long as where there were many passengers to alight therefrom, or to enter therein.

The rule applicable to different conditions has been clearly and fully stated by the Supreme Court of Minnesota as follows: "When the cars stop at a passenger's place of destination, it is his duty to leave the car without unnecessary delay, and the company's to give a reasonable opportunity to do so with safety. The exact length of time to be given must depend very largely upon circumstances. For instance, a longer time would be required when there are many passengers to alight than when there are but few;

in a dark night, with the landing-place badly lighted, than when there is full light; at a difficult place to alight, than where it is easy." *Keller* v. *Sioux City, etc., R. R. Co.,* 27 Minn. 178, 6 N. W. 486.

In commenting upon, and approving this rule, the Supreme Court of Wisconsin said: "It would be unreasonable and reckless to hold that the company is required to stop its trains just so long at every depot, and that everybody has the right to depend upon the strict performance of this duty. If the train be behind time, that time must be made up or some collision might occur. The time must depend upon the business it is required to do safely with the persons to whom the company owes any duty. Beyond that there is no reason."

The case from which we have just quoted was where a husband went to the station on a dark morning, about 4 o'clock, to meet his wife. When the train stopped he boarded it to assist his wife in alighting, but he missed her, she going out at another door from where he entered. He passed through one sleeper and was on his way to enter another, when the train suddenly started, and he was injured. There was no showing that his wife needed any assistance, and he boarded the train without the knowledge of any of the trainmen. All the passengers who desired to do so had left the train, and all seeking passage had entered. It was held that he was not a passenger, that under the facts, the company owed him no duty, and that he could not recover. *Griswold* v. *Chicago, etc., R. W. Co.,* 64 Wis. 652, 26 N. W. 101.

In *Lucas* v. *New Bedford, etc., R. R. Co.,* 6 Gray, 64, 70, was where an injury occurred after the injured party had assisted an aged and infirm relative to get on board, and it was said by the court: "We think it perfectly clear that Mrs. Lucas, at the time of the in-

jury, did not sustain such relation to the defendants as imposed on them any extraordinary care; that they were not bound to give her special notice of the time of the departure of the train; and that, if they exercised ordinary care, it was the most the law exacted of them."

These authorities are sufficient to show that it is the duty of the railway company towards those who are on its trains, even by its license, to run the train in the usual, ordinary manner only; and that it owes to such persons no special duty or protection.

Whether the appellee here was a passenger and entitled to the same consideration and protection as a passenger, or a mere licensee, can make no difference, under the facts, as to his right to recover. In either event the appellant was only bound to exercise the care, prudence, and judgment commensurate with its duties and obligations as a common carrier, and its relations to the public and the dispatch of its regular business. There is no obligation, that we are aware of, placed upon the servants of a railroad company, engaged as a common carrier of passengers, to pass through the train of cars to inquire or see if all passengers who desire have left the train at any station; nor is there any obligation resting upon such servants to inquire or see if all persons who happen to be in waiting in or about the station and platform, who desire, have entered such trains. The obligations of the railway company have been fully discharged towards the traveling public when it stops its trains a sufficient and reasonable length of time in which all persons so desiring may leave or enter the train, and provides a safe place for such exit and entry.

It may be remarked that it is also the further duty of the trainmen to call the stations upon their approach, so that passengers may prepare for alighting,

and upon the train being brought to a stop, it is the duty of passengers to alight or enter with such reasonable dispatch as may be, under the circumstances, consistent with their safety.

The Supreme Court of Iowa, upon this question, says: "The conductor is required, after having, at a proper time, announced the station, to stop the train and hold it such reasonable time as will permit passengers to alight in safety. He is not required * * * 'to know' that all passengers intending to stop at the station have alighted in safety." *Raben* v. *Central Iowa R. W. Co.*, 73 Ia. 579, 35 N. W. 645.

In *Hurt* v. *St. Louis, etc., R. W. Co.*, 94 Mo. 255, 7 S. W. 1, 34 Am. and Eng. R. R. Cases, 422, it was said: "When such a reasonable time has thus elapsed, it is no part of the duty of the servants of such corporation to make personal inspection of, or to interrogate the remaining passengers, to see whether they intend leaving the cars. The law imposes no such onerous duty upon a carrier of passengers."

In Mississippi it has been held that it is not the duty of the conductor of a train to see to the debarkation of passengers; but that he should have the stations announced, and stop long enough for passengers to get off. *New Orleans, etc., R. R. Co.* v. *Statham*, 42 Miss. 607.

This case was cited with approval by the Supreme Court of Georgia, in *Nunn* v. *Georgia R. R. Co.*, 71 Ga. 710.

In *Culberson* v. *Chicago, etc., R. W. Co.*, 50 Mo. App. 556, it was said: "If a carrier of passengers by railway stops the train long enough for the passenger, by the use of reasonable expedition, to get off, then there is no cause of complaint."

It is the duty of a company to provide suitable and safe means to passengers for entering and leaving

cars; that having done this, and having stopped its train in proper position, and for a reasonable time to enable passengers to avail themselves of those means in entering and alighting, it is not bound to render personal assistance nor hold the train until those in charge of it see that all the passengers have in fact alighted. See *Swigert* v. *Hannibal, etc., R. R. Co.,* 75 Mo. 475; *Carr* v. *Eel River, etc., R. R. Co.,* 98 Cal. 366, 33 Pac. 213, 21 L. R. A. 351; *Raben* v. *Cent. Iowa R. W. Co.,* 34 N. W. 621.

In *Falls* v. *San Francisco, etc., R. R. Co.,* 97 Cal. 114, 31 Pac. 901, it was held that it is the duty of companies to give their passengers a reasonable time and opportunity to approach and leave their trains, and that the duty is reciprocal. Passengers owe it to themselves and to the company to act with reasonable care in alighting from, and boarding trains.

It is also held that it is the duty of passengers, either in boarding or alighting from trains, to use all reasonable dispatch consistent with the surroundings, conditions, and circumstances, and their individual safety.

When we apply these well established rules to the facts in the case here, we are led to the conclusion that the appellee wholly failed to show any liability on the part of the appellant.

The jury found that the train stopped at Mount Vernon about three minutes. Under a strict construction, the court cannot say whether it was less or more than three minutes. In either event, the jury find that the train stopped about as long as appellee charged in his complaint it was required to stop under its rule, and hence he could not have been misled as to the time it actually did stop, or was to stop. The jury further find that there was no rule or regulation requiring the train to stop for any definite period. There is no

finding how many passengers alighted from the train or how many boarded it on the occasion of the accident. Neither is there any finding that from all the facts within the knowledge of the jury, the time the train did actually stop was a reasonable or unreasonable time.

The case of *Louisville, etc., R. W. Co.* v. *Costello,* 9 Ind. App. 462, is very similar to the one at bar, except that the appellee in that case was a passenger on appellant's train. His destination was Reynolds, and the train upon which he was a passenger arrived there at night. The jury found that the station was duly announced; that the train stopped from one to three minutes; that other passengers got on and off the train; that appellee, while said train was standing still, carefully and without unreasonable delay, went out on the platform of the car and attempted to get off on the platform at the depot, and that while attempting to get off said train, the servants of appellant suddenly started said train in motion, and by reason thereof appellee was injured, etc. In that case, the court, speaking by Davis, C. J., said: "There is no fact found in relation to the age or physical condition of appellee, or as to what he did or attempted to do, or was prevented from doing, that caused any delay or failure on his part in getting off the train, or that the servants of appellant had any notice or knowledge, when the train was started, that appellee was attempting to get off, or of any other fact or circumstance which required a longer stop than three minutes.

"It was conceded that, on the facts found, different inferences might reasonably be drawn on the question of contributory negligence, but as to this we express no opinion, yet, on these facts so meagerly found as to the circumstances and surroundings of the respective parties in connection with the transaction, we are

of the opinion that the only reasonable inference which can be drawn therefrom is, that appellant was not guilty of negligence in failing to stop longer than three minutes. The court will take judicial notice of the fact that ordinarily a stop of a passenger train for three minutes, at a station for the purpose of allowing passengers to get on or off of the train, is reasonable and adequate. In other words, it is not ordinarily negligence *per se* to fail to stop a passenger train for such purpose for a longer period than three minutes. If any special reason existed in this instance requiring a longer stop, such reason should have been shown. The mere fact that appellee, if in the exercise of due care and reasonable diligence, had not left the train in that time, did not, in itself, make the sudden starting of the train, after a stop of three minutes, a negligent act. If it appeared that appellee was old and feeble, or that appellant's servants knew, when they started the train, that he was attempting to get off, a different question would be presented."

The case from which we have just quoted seems decisive of the case in hand. In the special verdict there is no finding that there was any necessity for appellant to accompany his daughters on the train; that the time the train did stop was unreasonably short for the appellee to have gotten on with his daughters, and off, by the exercise of diligence and dispatch; there is no finding that the conductor or any other servant of appellant knew that he was about to alight from the train when the signal was given to start, while all the other acts of negligence charged are found adversely to the appellee. True, the jury did find that the brakeman saw appellee on the platform of the smoking car just before the train started, but it is not shown that the brakeman knew that he was intending to get off, and, under the rule, the finding must be construed

most strongly against him. The jury found as a fact that the conductor did not know that appellee was about to get off the train, that there was no sudden starting or jerking, but that the movement of the train, coupled with his attempt to step off, was the cause of his falling, etc.

There is nothing in the verdict that appellee was old, infirm, or in any manner crippled, that would prevent him from getting off and on the train quickly or otherwise. We know, as a matter of common experience and knowledge, that in the space of three minutes many passengers can leave a train and many enter it in perfect safety. We also know that three minutes is an unusually long time for a train to stop at an intermediate station to discharge and take on passengers. We further know, by observation and common knowledge, that an ordinary passenger coach is about sixty feet long, and that a person in three minutes, even at a slow gait, could walk at least five times the length of such car. It is the duty of a railroad, as a common carrier, as a matter of safety to its passengers, and for the dispatch of its business, to run its trains as nearly as possible on schedule time, and that it is the duty of its servants to cause its trains to depart from a station upon such schedule time, if it can be done, and especially is this true if, after giving a reasonable and sufficient time for passengers to leave and enter the train, after the leaving time of such train has arrived.

If the rule prevailed for which appellee here contends, a person could enter a passenger train accompanying a friend or relative for the purpose of assisting him or her, and, though the train consisted of half a dozen or more coaches, and he should enter the forward one and finding it crowded could pass on from car to car until the last was reached, and it would be

the duty of the conductor to hold the train until he would alight. This is not the rule, and should not be, for it would not only infringe upon the rights of the traveling public, but render railroad travel more hazardous by such delays, and interfere materially with the running and operation of trains.

We are unable to say, as a question of law, that the appellant was guilty of actionable negligence, but on the contrary, we think it clearly appears that it was free from any negligence whatever.

In cases of this character the burden is upon the plaintiff to establish his freedom from contributory negligence, and when the special verdict fails to show that fact, the defendant is entitled to judgment. *Standard Oil Co.* v. *Helmick* (Ind. Sup.), 47 N. E. 14.

The facts found by the special verdict in this case wholly fail to show that the appellee was free from fault or negligence.

The judgment is reversed, with instructions to the court below to render judgment on the special verdict in favor of the appellant.