## MIDLAND VALLEY R. CO. v. BAILEY.

### No. 1896.   Opinion Filed June 25, 1912.

1. **CARRIERS—Injury to Passengers—Care Required.** The plaintiff entered the defendant's train for the purpose of assisting a sick passenger. The conductor and other employees were not notified that it was her intention to alight from the train after seating the sick person, nor were there any facts or circumstances charging them with notice of her intention. After making the usual stop, the station being clear, the conductor started his train, and the plaintiff alighted from it while it was in motion. **Held,** that she was not entitled to recover.

2. **TRIAL—Instructions—Submission of Law Questions.** It was error to give the following instruction: ''The question of negligence is a question for the jury alone. You alone are the sole judges of that question. The laws of this state take that out of the province of the court, and it is for you to say what does or does not constitute negligence.''

3. **NEGLIGENCE — Trial — Nature and Elements — Instructions — Functions of Jury.** Negligence is a breach of duty. In order for it to exist, there must be both a duty and a breach of it. It is the duty of the court in its instructions to advise the jury of the duties which the law imposes upon the parties, and, where there is conflict in the evidence, it is the function of the jury to determine whether these duties imposed by the law have been violated. The jury is the judge of the fact, and not of the law.

(Syllabus by Ames, C.)

*Error from District Court, Osage County;*
*John J. Shea, Judge.*

Action by Mary N. Bailey against the Midland Valley Railroad Company for personal injuries. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Edgar A. De Meules,* for plaintiff in error.

*C. K. Templeton* and *Boone, Leahy & McDonald,* for defendant in error.

Opinion by AMES, C. The testimony in this case discloses the following facts: The plaintiff's daughter was sick, and was taken to the depot of the defendant at the city of Pawhuska, accompanied by Dr. Speck, the plaintiff, and possibly one or two

others, for the purpose of being carried as a passenger on the defendant's train. When the train stopped, Dr. Speck advised the conductor that he had a sick patient whom he desired to put on the train, asked him if he could take her in at the rear door of the rear car, and also asked for time to put her on the train. The doctor was intending to accompany the patient to her destination, and said nothing to the conductor about getting off the train after the patient had been seated, and the defendant was not in any way advised that it was the purpose of the plaintiff or any one else to leave the train after comfortably placing the sick person. The train stopped from three to ten minutes at the station, the direct evidence tending to show that it was ten minutes, while some opinion evidence placed it as low as three to seven minutes. After the usual business had been transacted, the conductor observed that the platform was clear and gave the usual signal, and the train started. The plaintiff, after the train had run 30 to 50 feet, stepped off, fell, sprained her ankle, and brought this suit, recovering judgment for $1,500. Thirty-three errors are assigned by the defendant, many of which are argued elaborately, but it will not be necessary to consider all of them.

The principal question in the case is whether or not the conductor of a train who is not informed that a person assisting a sick passenger desires to leave the train after the passenger has been seated, and who does not know that such person desires to leave the train, is bound to ascertain that fact before starting his train. To state the question is practically to answer it. In this case the petition did not allege that the defendant company had any knowledge that it was the purpose of the plaintiff to leave the train. It did not allege that there were any facts or circumstances which charged the defendant with notice that it was plaintiff's intention to leave the train, and the evidence was in perfect harmony with the petition, there being no evidence of any kind whatsoever tending to show such knowledge on the part of the defendant company, or any circumstances tending to charge the company with notice. A demurrer was filed to the petition, which was overruled. Objection to the introduction of evidence was made and overruled. A demurrer to the plaintiff's

evidence was interposed and overruled, and a request for a per-
emptory instruction was presented and denied, so that the point
was saved at every step in the proceeding.   There is no contro-
versy but that it is the duty of a railroad company to stop at
stations a sufficient length of time to permit reasonably careful
persons to leave and enter the train and transact their business
with the company.   If the railroad company receives sick passen-
gers, it is its duty to stop a sufficient length of time to enable these
passengers, in the exercise of reasonable care, to enter the train.
If persons not intending to become passengers desire to assist
sick persons to enter the train, they have the right to do so, but,
if they desire special service on account of their intention to
leave the train after seating the patient, it is only fair that they
should notify the railroad company of this desire.   The conductor
cannot be expected to enter his train and inquire of persons
whether they desire to get off, but, when reasonable time has
been given and the platform is clear, he has a right to start the
train, and, as the plaintiff in this case had not given the con-
ductor or any other employee of the defendant any notice of her
intention to leave the train after seating her daughter, it was
not the duty of the defendant to hold the train indefinitely or
make special inquiry concerning her plans.   The doctor did speak
about putting his patient on the train, but said nothing about
wanting time to get off, and, in fact, did not get off, as it was his
purpose to and he did become a passenger, going with the patient
to her destination.   It would have been entirely convenient in that
same conversation to have cautioned the conductor that the plain-
tiff desired to leave the train, but he did not do so, and therefore
no special duty devolved upon the defendant to do more than
give reasonable time for reasonable people to enter the train with
the patient.   These principles are so simple and seem so clear
and just that it is not surprising that the authorities are in sub-
stantial harmony in laying down the rule.   In Hutchinson on
Carriers (3d Ed.) sec. 991, the rule is stated as follows:

"A person who comes to a railroad station to assist pas-
sengers in entering or leaving the train, though not a passen-
ger, is not a trespasser, as he comes with at least the tacit in-
vitation of the carrier.  While so engaged, he does not stand in

the relation to the carrier of a bare licensee, but is deemed to have been invited to be there by virtue of the relation existing between the carrier and the intending or arriving passenger. The carrier, therefore, owes to him the duty of exercising at least ordinary care to see that he is not injured by reason of defective stational facilities or approaches thereto. So one who goes upon a train to render necessary assistance to a passenger, in conformity with a practice approved or acquiesced in by the carrier, has a right to render the needed assistance and leave the train; and the carrier, in permitting him to enter with knowledge of his purpose, is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor. If he is injured by reason of the sudden starting of the train or the omission to give the customary signals, the carrier will be liable."

This rule is supported by numerous authorities, amongst which are the following, to which our attention is called by the plaintiff in error: *Little Rock & F. S. Ry. Co. v. Lawton,* 55 Ark. 428, 18 S. W. 543, 15 L. R. A. 434, 29 Am. St. Rep. 48; *Seaboard Air Line Ry. v. Bradley,* 125 Ga. 193, 54 S. E. 69, 114 Am. St. Rep. 196; *Hill v. Louisville & N. R. Co.,* 124 Ga. 243, 52 S. E. 651, 3 L. R. A. (N. S.) 432; *Atlantic & B. R. Co. v. Owens,* 123 Ga. 393, 51 S. E. 404; *Coleman v. Georgia R. & B. Co.,* 84 Ga. 1, 10 S. E. 498; *Cole's Adm'r v. Chesapeake* (Ky.) 113 S. W. 822; *Berry v. Louisville & N. R. Co.,* 109 Ky. 727, 60 S. W. 699; *Lucas v. New Bedford,* 6 Gray (Mass.) 64, 66 Am. Dec. 406; *Flaherty v. Boston & M. R. R.,* 186 Mass. 567, 72 N. E. 66; *Saxton v. Missouri Pac. R. Co.,* 98 Mo. App. 494, 72 S. W. 717; *Yarnell v. K. C., Ft. S. & M. Ry.,* 113 Mo. 570, 21 S. W. 1, 18 L. R. A. 599; *Dunne v. New York,* 99 App. Div. 571, 91 N. Y. Supp. 145; *Izlar v. Manchester & A. R. Co.,* 57 S. C. 332, 35 S. E. 583; *Oxsher v. Houston, E. & W. T. R. Co.,* 29 Tex. Civ. App. 420, 67 S. W. 550; *Bullock v. Houston, E. & W. Ry. Co.* (Tex. Civ. App.) 55 S. W. 184; *International & G. N. R. Co. v. Satterwhite,* 15 Tex. Civ. App. 102, 38 S. W. 401; *Dillingham v. Pierce* (Tex. Civ. App.) 31 S. W. 203; *Griswold v. Chicago, N. & W. Ry. Co.,* 64 Wis. 652, 26 N. W. 101; *Chesapeake & O. R. Co. v. Paris,* 107 Va. 408, 59 S. E. 398. The only case cited by the plaintiff which in any way conflicts with this general rule is *Louisville & N. R. R. Co. v. Crunk,* 119 Ind. 542,

21 N. E. 31, 12 Am. St. Rep. 443, but this case appears never to have been followed in the state of Indiana, and it has been expressly criticised in the case of *Little Rock v. Lawton, supra;* by the annotator of the American State Reports at page 55 of 29 Am. St. Rep., in connection with the report of *Little Rock v. Lawton;* by the Supreme Court of Texas in *Houston, etc., R. Co. v. Phillio,* 96 Tex. 18, 69 S. W. 994, 59 L. R. A. 392, 97 Am. St. Rep. 868; and Indiana itself apparently criticises the rule therein laid down in the case of *Louisville & N. R. Co. v. Espenscheid,* 17 Ind. App. 558, 47 N. E. 186. Other authorities supporting the rule we announce are collected in notes in 15 L. R. A. 434, and 3 L. R. A. (N. S.) 433.

One of the instructions given by the court is as follows:

"The question of negligence is a question for the jury alone. You alone are the sole judges of that question. The laws of this state take that out of the province of the court, and it is for you to say what does or does not constitute negligence."

This instruction was erroneous, and in effect makes the jury the judge of both the law and the facts. Negligence is a breach of duty. A common carrier's duty to passengers, to employees, to the public, and to those entering upon its train for a special purpose is measured by the law, and not by the opinion of the jury. It is therefore the duty of the court to inform the jury of the duty which the law imposes upon a carrier charged with negligence, and the question of negligence, where the facts are disputed, must be determined by the jury in accordance with these principles of law. Under the law it was not the duty of the defendant in this case to wait for the plaintiff to alight from the train, unless there was in fact some notice to the defendant, some notice that it was her purpose to alight, and it was the duty of the court, when instructing upon the question, or upon proper request, to advise the jury of the nature and extent of the duty. When the evidence conflicts, it is the function of the jury to determine whether the duty has been performed. When there is no conflict in the evidence, and when there are no facts or circumstances reasonably tending to show that the defendant has been guilty of a breach of duty, then there is no question to submit to the jury, as the primary negligence of the defendant

is not to be submitted to the jury in the absence of some evidence tending to establish it. *Phoenix Printing Co. v. Durham*, 32 Okla. 575, 122 Pac. 708; *Solts v. Southwestern Cotton Oil Co.*, 28 Okla. 706, 115 Pac. 776; *C., R. I. & P. Ry. Co. v. Baroni*, 32 Okla. 540, 122 Pac. 926. It is manifest that, if the jury is the sole judge of the question of negligence, the law is as uncertain as the opinions of different juries. One jury might think it was the duty of the conductor to go into the train and inquire of the passengers whether any of them expected to alight before starting his train, and, entertaining this opinion, it would think it was negligence for the railroad company to start the train without this inquiry. Another jury might think that it was not the duty of the railroad company to make this inquiry, and therefore, under the same facts exactly, the plaintiff in one case might recover, while the plaintiff in the other case might fail to recover. The law is fixed, is stable, is not subject to change according to the variable opinions of any particular twelve men, but represents the wider consensus of opinion of the entire people, and it is the peculiar function of the court to know the law and to inform the jury, so that in the exercise of its duty of applying the law to the facts it may have a stable rule of action to aid it in the administration of justice, and the law of this state does not relieve the courts of this duty.

It is not necessary to examine the remaining assignments of error, as enough has been said to show the reasons why we think the case should be reversed and remanded.

By the Court: It is so ordered.