## CHICAGO, R. I. & P. RY. CO. v. BROOKS et al.

No. 8986—Opinion Filed April 1, 1919.

(179 Pac. 924.),

(Syllabus.)

1. Carriers—Assistance to Departing Passenger—Holding Train—Liability.

One who goes upon a train to render nec

essary assistance to a passenger, in conformity with a practice approved or acquiesced in by the carrier, has a right to render the needed assistance and to leave the train; and the carrier, in permitting him to enter with knowledge of his purpose, is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor. If he is injured by reason of the sudden starting of the train or the omission to give the customary signals, the carrier will be liable.

**2. Same—Notice of Entry of Train—Negligence—Evidence.**

Evidence in this case examined, and held sufficient to go to the jury on the question of whether the defendant railway company, through its agents, had notice that the deceased entered the train for the purpose of seating his wife and whether it was negligent in suddenly starting the train without giving him a reasonable time to procure a seat for his wife and to get off in safety.

**3. Appeal and Error—Judgment—Bar—Parties on Appeal — Jurisdiction to Reverse or Modify.**

In an action by plaintiff against defendant railway company and two members of its train crew for the negligent killing of her husband in the operation of one of defendant company's trains, a judgment was rendered for the plaintiff and against the defendant railway company, and in favor of the individual defendants. The defendant railway company appealed to the Supreme Court, naming its co-defendants defendants in error, where the cause was reversed and remanded. On the second trial the trial court sustained defendant's objection to the introduction of any evidence against the railway company's co-defendants, said trial resulting in a judgment against the defendant railway company. Held: (1) that on the former appeal the two members of the train crew were proper and necessary parties thereto, and were properly joined as defendants in error; (2) that the judgment rendered at the first trial was a joint judgment and the Supreme Court obtained jurisdiction to reverse, vacate, or modify the same or direct that such be done by the trial court as to all parties; (3) upon the reversal of said judgment plaintiff was entitled to a new trial as against all the defendants in the action; (4) that the first judgment in favor of the individual defendants was not a bar to recovery against the railroad company as to the alleged negligence of the individual defendants.

**4. Carriers—Instructions.**

Certain requested instructions examined and held, that insofar as they state correct propositions of law, as applicable to the instant case, are covered in the general charge.

**5. Same.**

The charge of a certain instruction set out in the opinion held not to constitute prejudicial error.

**6. Appeal and Error—Harmless Error.**

A case will not be reversed for error in the admission or rejection of evidence, unless it appears from an examination of the entire record that such error has resulted in a miscarriage of justice, or constitutes a substantial violation of constitutional or statutory right.

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by Mrs. Florence M. Brooks against the Chicago, Rock Island & Pacific Railway Company and O. B. Howard and George Young. Verdict and judgment against defendant railway company, and it brings error. Affirmed.

W. H. Moore, C. O. Blake, R. J. Roberts, and J. E. DuMars, for plaintiff in error.

Carlisle & Edwards, for defendants in error.

RAINEY, J. This is an action instituted by Mrs. Florence M. Brooks against the Chicago, Rock Island & Pacific Railway Company, R. P. Howard, and George Young to recover damages for the alleged negligent killing of plaintiff's husband, Roy Brooks, at Elk City, Okla., on the 24th day of August, 1911. The cause was submitted to a jury, which returned a verdict for the plaintiff and against the railway company, in the sum of $7,000, from which the railroad company has appealed, assigning numerous errors

This is the second time this case has been appealed to this court; the opinion on the first appeal being found in 57 Okla. 163, 156 Pac. 362. The judgment in the instant case was affirmed on the 23rd day of July, 1918, in an opinion by Commissioner Pope, but a rehearing was granted, and the case is now before us for full consideration.

At the outset we will outline the case and more particularly refer to the evidence in the discussion of the assignments of error to the extent that it appears proper in order to lucidate the particular question presented and our opinion thereon.

The evidence in the case discloses that the plaintiff, accompanied by her husband, Roy Brooks, and his brother, Howard Brooks, went to the depot of the defendant railway company at Elk City early in the morning of August 24, 1911, to meet train No. 44, an east-bound passenger train, which was due at said station at 2:25 a. m., but was late on this particular morning, and arrived about 2:31 a. m. The plaintiff, with her

two small children, one an infant, was going on said train to Oklahoma City, and, being incumbered with the children and several pieces of hand baggage, her husband, Roy Brooks, and Howard Brooks went upon the train with her for the purpose of assisting her onto the train and finding a seat for her. After entering the train and before Roy Brooks and Howard Brooks had an opportunity to seat Mrs. Brooks and the children, the train started, and the two men thereupon immediately turned and hurriedly left the car, Howard Brooks preceding Roy Brooks. Howard Brooks jumped from the train and was thrown to the ground. He got up and began looking for his brother, when he saw the train stop just east of the depot. Thinking that the train stopped to permit his brother to alight, he walked toward the train, and found the deceased so badly crushed that death must have instantly taken place. The train had been stopped for the purpose of permitting a Mr. Hickman to alight. He had also entered the train to get a seat for his wife.

The railway company insists that there is no liability in this case, for the reason that it was incumbent upon the plaintiff to bring home to the defendant company notice of the fact that Roy Brooks, deceased, entered the train for the purpose of assisting his wife, and not for the purpose of becoming a passenger. This was one of the allegations in her petition. There can be little controversy as to the law on this question. In Midland Valley Ry. Co. v. Bailey, 34 Okla. 193, 124 Pac. 987, this court, in an opinion by Commissioner Ames, discussed the question of the duty of a railroad company to persons who accompany their relatives or friends to a train for the purpose of assisting such persons in entering or leaving the train, and there alluded to the fact that the authorities are in substantial harmony, and quoted with approval from Hutchinson on Carriers (3rd Ed.) § 991, the rule universally recognized, which is as follows:

"A person who comes to a railroad station to assist passengers in entering or leaving the train, though not a passenger, is not a trespasser, as he comes with at least the tacit invitation of the carrier. While so engaged, he does not stand in the relation to the carrier of a bare licensee, but is deemed to have been invited to be there by virtue of the relation existing between the carrier and the intending or arriving passenger. The carrier therefore owes to him the duty of exercising at least ordinary care to see that he is not injured by reason of defective stational facilities or approaches thereto. So one who goes upon a train

to render necessary assistance to a passenger in conformity with a practice approved or acquiesced in by the carrier, has a right to render the needed assistance and leave the train; and the carrier, in permitting him to enter with knowledge of his purpose. is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor. If he is injured by reason of the sudden starting of the train or the omission to give the customary signals, the carrier will be liable."

A comprehensive list of authorities is cited in the opinion in support of this doctrine.

Counsel for the railway company assert that the case at bar is governed by the Bailey Case, supra, and although we are in thorough accord with the law as announced therein, we think that the facts of that case are clearly distinguishable from those in the case now under consideration. From an examination of the Bailey Case it appears that a daughter of Mrs. Bailey, the plaintiff, was sick, and was taken to the depot of the Midland Valley Railway Company, at Pawhuska, Okla., accompanied by her physician, Dr. Speck, the plaintiff, and one or two other persons. Dr. Speck informed the conductor of the train that he had a sick patient whom he desired to put on the train, and asked permission to take her in at the rear door of the last car and for sufficient time for that purpose. The doctor was going with his patient to her destination, and did not advise the conductor that he, the plaintiff, or any one else desired to leave the train after placing his patient thereon; neither was the conductor so advised by the plaintiff or any other person. After the train started and had gone about 50 feet, the plaintiff stepped off, injuring herself. It was held that the company was not liable. The learned Commissioner, in holding that a conductor of a train who was not informed that a person assisting a sick person desired to leave the train after the passenger had been seated, and who did not know that said person wanted to leave the train, was not bound to ascertain that fact before starting the train, pointed out that plaintiff's petition in that case did not allege that the company had any notice the plaintiff intended to leave the train, and that there was no evidence whatever in the record tending to show such knowledge, and there were no circumstances tending to charge the company with notice. In the instant case the brakeman and conductor both testified that they were not informed and did not know that the deceased or his brother were not passengers and that they intended leaving the train after seating Mrs. Brooks and

her small children. According to Mrs. Brooks' testimony, her party got to the station about 15 minutes before the train came in, and when it arrived they immediately started for it; that an employe of the company was standing by the steps, but did not offer to assist her with her children and baggage; that her husband carried the little girl, and that she lifted the other girl upon the steps, which were very high, and she could hardly get up; that when she got up she lifted the little girl up and turned to her husband, and said, "Are you going to get on the train and help me on with my things?" and that he answered, "Yes," that he would go on; that she then turned and went into the train with her husband carrying the little baby and a small grip, and her brother-in-law carrying her baggage and hat. She said that the conductor or brakeman, or whoever the employe was standing at the train, was within one foot of her and close enough to see what had transpired between her and her husband and to hear what was said. Howard Brooks also testified that he saw an officer of the train standing by the train door, and that the said officer remained there until they got into the car, and that the deceased, in answer to an inquiry from the witness as to whether he was going to help Mrs. Brooks on, answered "Yes."

There is no denial of this testimony in the record; the only controverted question being whether the conductor or brakeman heard the conversation or noticed their situation, and, notwithstanding their testimony that they did not, we think the circumstances were sufficient to submit the question as to whether they had notice to the jury, and since the plaintiff's testimony placed the employe of the company in a position where he could have heard the conversation and thereby been apprised of the circumstances attendant upon the deceased's entering the car, it was clearly within the province of the jury to say whether or not he did hear the conversation, and thus had notice of the deceased's intention to leave the train after assisting his wife to a seat.

For the purposes of this case we must assume that the plaintiff's testimony is true, and upon this hypothesis it seems to us that the railway company, through its employes at the entrance to the train, was negligent. It is not an unusual thing for a husband or other member of a family to accompany the wife and small children to the train for the purpose of assisting them in taking passage; in fact, it is so usual and customary that the conductor or other employe

stationed at the steps for the purpose of assisting passengers to alight and enter, under the circumstances of this case, in the exercise of ordinary care, ought to have given particular attention to them. It is apparent to any reasonable mind that a woman with small children and baggage needs assistance under such circumstances and when she presented herself at the steps of the passenger car thus situated, the jury could reasonably say that the circumstances of the situation were sufficient to attract the attention of the conductor, and that he did hear the conversation that took place between them and had actual notice. It is not contended that the passengers were advised that the train was to start when it did. The conductor testified that before he started the train he called "All aboard," and that he signaled the engineer to start, which signal was given by raising his lantern up and down. The other witnesses testified that they neither saw nor heard any signals. The plaintiff's witnesses also testified that the train stopped only a very short time; some put it at one minute, and others at a minute and a half. The conductor testified that it stopped five minutes, but as to whether the train stopped a sufficient length of time to allow the deceased to depart was a question for the jury, and as there was positive testimony given by the plaintiff's witnesses that plaintiff and her party got on the train just as soon as it stopped, and that it started immediately thereafter, there can be little doubt that sufficient time was not given the deceased to depart from the train, and it was negligence to start the train without giving him a reasonable time within which to alight after having knowledge that such was his purpose. The fact that Mr. Hickman did not have time to alight after seating his wife is also significant on this phase of the case.

Upon the first trial of this action the jury returned a verdict in favor of the brakeman, the defendant Young, and the trial court sustained a demurrer to the evidence as to the conductor, the defendant Howard, and it is now contended that that judgment was not appealed from and became final as to said defendants, and that there cannot be a recovery against the railway company in this action on any allegations of negligence on the part of the conductor or brakeman that were determined upon the original trial. Upon the second trial the trial court entertained the view, and so ruled, that the original adjudication as to Conductor Howard and Brakeman Young became final, and refused to permit a

retrial of the case as to them. This was an error against the plaintiff. The conductor and brakeman were properly made parties defendant on the former appeal, and when the judgment was reversed the plaintiff was entitled to a new trial against them as well as against the railway company. Under similar circumstaces this court so held in Chicago, R. I. & P. Ry. Co. v. Austin, 63 Okla. 169, 163 Pac. 517, L. R. A. 1917D, 666, wherein it was said:

"(1) On the former appeal the conductor and other members of the train crew were proper and necessary parties thereto, and were properly joined as defendants in error; (2) that the judgment rendered at the first trial was a joint judgment, and the Supreme Court obtained jurisdiction to reverse, vacate, or modify the same or direct that such be done by the trial court as to all parties; (3) upon the reversal of said judgment plaintiff was entitled to a new trial as against all defendants in the action. * * *

"The judgment rendered at the former trial is pleaded by both defendants as a bar to plaintiff's right of recovery. * * * It might be argued that, inasmuch as Mrs. Hunt failed to appeal from the judgment in favor of Belt, it became final as to him. This, however, cannot be true. * * * (2) That Mrs. Hunt's failure to appeal from the judgment in favor of Belt did not cause that judgment to become final as to him. * * * Connors and the other defendants' were necessary parties to the proceedings in error, and a reversal of the judgment would require him to defend upon another trial and take the chances of a verdict being rendered against him thereat. * * * The failure of plaintiff, Austin, to file cross-petition in error seeking to have the judgment in favor of the defendant Connors reviewed did not operate to cause said judgment to become final as against plaintiff. * * *"

Howard and Young, at the beginning of the second trial, were dropped from the case and no complaint is made by the defendant railway company of this action by the trial court, doubtless for the reason that said ruling was made at its request, and the case, as regards the railway company, is precisely in the same situation as if these defendants had never been joined. It follows that the rule of respondeat superior invoked by the defendant company has no application to this case.

Complaint is made of the refusal to give certain requested instructions. We have examined all these, and find that, in so far as they state correct propositions of law as applicable to the case, they are covered in the general charge. It is also urged that the court erred in giving the following instruction to the jury:

"You are instructed that the contract of a carrier of passengers for reward is that it will carry the passengers safely and in a proper carriage, and afford such persons safe and convenient means for entering cars and alighting therefrom; but such carrier is not bound to render a passenger personal attention or services beyond that, except where such passenger by reason of illness, great age, or other infirmities are unable to help themselves, and whether or not the plaintiff in this case came under that class is a question for you to determine by the evidence; the burden being upon her to establish this by a preponderance of the evidence."

The particular objection made to this instruction is that there was no evidence showing that plaintiff was very olld or that she was ill or suffering from any other infirmities. The record, on the contrary, shows that she was a young woman, 21 years of age and in good health; but we do not think there is any merit in this assignment of error. The instruction, abstractly, is correct but it is not comprehensive enough, for the duty of the railroad company is not alone to those who are sick or very old, but is to all passengers who are unable to help themselves where the company has notice of their need of assistance.

The court also gave the following instruction, which was applicable to the facts of the case:

"You are further instructed that, where the officers of a train knowingly permit one to enter the train for the purpose of assisting one who needs assistance in entering such train. it is presumed to be that such person may render the needed assistance, and it is the duty of the carrier under such conditions to hold the train a reasonable time for such purpose, and if such person while so engaged is injured by the sudden starting of the train or the omission to give the customary signal. the carrier will be liable for such injuries."

But the liability of the company does not depend alone on whether the plaintiff needed assistance, but rests on the proposition that it, through one of its employes, permitted the deceased to enter the train for the purpose of assisting his wife to a seat and with the intention of getting off after having accomplished his mission, and that it, with such knowledge, negligently started its train without giving him an opportunity to do so. The instructions must be considered as a whole, and we cannot see how the instruction complained of could have prejudiced the defendant company in any way.

Richard R. Wilson, one of the witnesses for the plaintiff, was permitted to testify over objection of defendant's counsel that

very shortly after the train arrived at Clinton, at 4:10 a. m., where the death of the deceased was first made known to the train crew and the deceased's wife, he heard the brakeman, Young, discussing the accident, in which Young stated that he pushed some one off. Counsel for the railroad company most earnestly contend that said defendant's statement was not a part of the res gestae; that the testimony was only competent as to the defendant Young, and, having been admitted against the railway company, constituted error of a grossly prejudicial character. Laying out of the case the question as to whether said statement was a part of the res gestae, and assuming that the general objection made to the introduction of said statement is sufficient to raise the question, we think, under the circumstances of this case, that the error, if any, was not prejudicial, for the following reasons: Plaintiff's petition, as originally filed, consisted of two counts. In the second count one of the grounds for recovery was that George Young, the brakeman, while acting within the scope of his employment, willfully and wantonly shoved and pushed the deceased in such a way as to cause him to fall from the train while it was moving, which resulted in the deceased's death. On the second trial this allegation of negligence was abandoned, and no recovery was sought on this ground. The court in its instructions to the jury did not submit this issue. Immediately after the admission of this testimony the court sustained the defendant's objection to the same testimony offered through the same witness and throughout the trial continually sustained objections to all testimony relative to any alleged negligence in shoving the deceased from the train. Moreover, Mrs. Pearl Wilson, wife of Richard R. Wilson, who was also a witness for the plaintiff, was asked on direct examination with reference to the statement of the brakeman, but on objection of defendant's counsel was not permitted to testify in regard thereto. Notwithstanding this, on cross-examination counsel for defendant voluntarily propounded to her the following question: "Q. Where was the brakeman when you heard this statement in regard to having shoved the fool out to keep him from breaking his neck?" To which she replied: "A. In the depot."

Under section 6005, Rev. Laws 1910, this court is not permitted to reverse a case for the erroneous admission or rejection of evidence unless, after an examination of the entire record, it appears that such error has resulted in a miscarriage of justice, or is a substantial violation of a constitu-

tional or statutory right. After a thorough examination of the record in this case, we cannot say that the error in the admission of said testimony even remotely affected the verdict, as the case did not turn on that issue at all, or that it resulted in a miscarriage of justice.

Finding no reversible error in the record the judgment of the trial court is affirmed.

All the Justices concur.