| 85 | 197 |
| 87 | 379 |
| 85 | 197 |
| 104 | 767 |
| 85 | 197 |
| ο118 | 903 |

Roul *v.* The East Tennessee, Virginia and Georgia
Railway Company.

If a servant of a railroad company obeyed the order of a superior
  servant to mount a locomotive running at from six to twelve miles
  per hour, the company is not liable for the injury thereby sus-
  tained.

April 14, 1890.

Negligence. Railroads. Master and servant. Be-
fore Judge Marshall J. Clarke. Fulton superior
court. September term, 1889.

Roul sued for damages. The testimony tended to
show the following: He was employed as a fireman
on an engine of defendant. He had no particular runs
to make, but the way he was to go was decided by
Tracy, who was the foreman of the round-house.
Tracy makes out the board and tells the different en-
gineers and firemen to go out. They are employed by
the master-mechanic. Plaintiff was under Tracy, and
had been a fireman for five or six months. Early in
the morning of May 31, 1887, he had come in on his
engine from Rome, having been running all that night.
When he got into Atlanta he was tired, sleepy and
worn out, and went to sleep at his boarding-house. A
call-boy sent by Tracy came to his room from the
round-house, where he was employed, and woke plain-
tiff up, telling him to get up and go to his engine.
This was about eight o'clock, and plaintiff got break-
fast and went to the round-house in about half or three
quarters of an hour after being waked. When he got
to the round-house, he saw his engine going down the
track, and tried to throw the keys to the fireman's
box on the engine, but saw the engine was running
pretty fast and placed the keys back in his pocket.
He then went to Tracy who could see his engine going
off, and asked Tracy why he had sent some one else

out on his engine. At that time Tracy saw another engine coming up, and made some remark about having some one else on plaintiff's engine, and told him to go on and take the engine that was coming up and go down to the yard and send the man up from plaintiff's engine, and go out and make the trip. Plaintiff thereupon ran towards this second engine and got either on or near the track, on which this engine was running backwards, and signalled the engineer to stop, but the engineer did not see this signal. There were two or three men in the engine in addition to the engineer and fireman, and the engineer was talking to one of them, and the fireman was engaged with his work. Plaintiff got out of the way, got on the side of the track and got ready to catch on the engine, and as the engine came up, going at that time at a speed variously estimated by his witnesses at from six to nine miles an hour, he jumped to catch the engine. He got on the steps which are fastened to the foot-board, that being the usual way to get on, catching hold of the rods with his hands and with his knees or feet on the steps of the foot-board, and just as he got firmly on the engineer reversed the engine, causing a jerk which threw plaintiff off with his feet under the wheels and badly injured him. He had not rested long enough at the time he undertook to get on the engine to be a strong man; was able to do work at the time; was in condition to get on a moving engine safely; was not tired to such an extent as to disable him from getting on an engine safely; does not think he was disabled to an extent that would make it dangerous for him to attempt to get on an engine. It has been entirely safe for him to get on an engine running eight or nine miles an hour, as he testified this engine was running; but it is safer for a man to get on when the engine is dead still. He thinks it was entirely safe for him to try to get on the

engine running as it was. It is the rule for any man to wave the engine down, and it is necessary, according to the rules of the railroad, as plaintiff remembers them, for the engineer to slack up and let the man on. Plaintiff followed the rules and waved them down ; he did not know all the rules of the road ; could not state if it was a necessity to stop the engine, but still it is done; if a man wants to get on an engine, he generally goes on the track and waves the engineer down. There are different degrees of danger according to the speed of the engine. It was a customary thing for persons employed about an engine to board it while it was in motion, and in fact, a witness testified, such an employee could not retain his position unless he did so. This witness also testified that a railroad man could with safety get on an engine running six or eight miles an hour; a man who was accustomed to it. Plaintiff did not know that it was the rule of the road not to get off or on an engine in motion. There was evidence as to his age, wages, loss of time, loss of capacity, suffering, etc.

The defendant moved for a nonsuit, which was granted, and the plaintiff excepted.

J. T. GLENN and R. L. SIBLEY, by brief, for plaintiff. No appearance for defendant.

SIMMONS, Justice.

. Under the facts as disclosed by the record, there was no error in granting a nonsuit in this case. The facts show, in brief, that the plaintiff undertook to get upon an engine which was running at the rate of from six to twelve miles per hour. It seems to us that any man of common sense would have known that it was a rash and dangerous attempt. It is claimed, however, that he was justified because he was ordered to do so by his boss or superior. The evidence does not show

that the boss ordered him to get on the engine while it was moving at this rate of speed; and the action of the plaintiff shows that he did not so understand the order, because he gave the engineer a signal to stop, and the engineer, either not seeing the signal or not heeding it, did not stop, and the plaintiff then undertook to mount the engine as it ran past him. Even if the boss had ordered him to get upon the engine while it was moving at this rate of speed, it would not have protected the plaintiff, because the act was so rash and dangerous that he was not obliged to obey such an order, and if he did so it would be at his peril. See *Galloway* v. *W. & A. R. R. Co.*, 57 *Ga.* 512; *W. & A. R. R. Co.* v. *Adams,* 55 *Ga.* 279; *Baker* v. *W. & A. R. R. Co.*, 68 *Ga.* 699; *Bell* v. *W. & A. R. R. Co.*, 70 *Ga.* 566. But it is manifest that the order had no such meaning. There is no ground for so construing it.

*Judgment affirmed.*