CASE 99—PETITION ORDINARY—January 18.

# Louisville & Nashville R. R. Co. v. Hale, Etc.

APPEAL FROM LAUREL CIRCUIT COURT.

1. RAILROADS—STARTING TRAIN BEFORE PASSENGER SEATED.—A conductor of a railroad train is not required to see that a passenger has reached a seat before starting his train; and there being no special infirmity, such as weakness or lameness, the fact that a woman who boards such a train encumbered with several small children, and who is accompanied by her son-in-law, does not take the case out of the general rule.

J. W. ALCORN AND J. A. CRAFT, FOR APPELLANT.

(Brief not in the record.)

TINSLEY & FAULKNER, FOR APPELLEES.

1. The train men seeing the helpless condition of the appellee and how she was encumbered, it was their duty not only to have assisted her on the train but to have awaited the starting of the

Louisville & Nashville R. R. Co. v. Hale, etc.

train until she was seated.  Shearman & Redfield on Negligence, sec. 508.

EWELL & SMITH, OF COUNSEL, ON THE SAME SIDE.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

The appellee recovered judgment for $1,500 against the appellant for injuries alleged to have been caused by the violent forward movement of appellant's train at Lily—at which place appellee boarded the train of appellant—which threw her against the arm of a car-seat before she could get seated.  She alleged that she sustained injuries in the back, hip and knee which confined her to her bed for some three months, and which were painful and permanent in their nature, since which time she has been unable to perform much labor.

The principal error relied on for reversal is in the giving of instruction one, offered on behalf of appellee, which is as follows:  "If the jury shall believe from the evidence that plaintiff purchased a ticket of defendant from Lily to Richmond, Ky., and attempted to get aboard of defendant's train at Lily, and that those in charge of said train caused same to start before she had reasonable time to safely get aboard and get seated, and that in so starting or moving said train she was thrown upon and between the seats and injured in her knee, hip or back, they will find for her such sum in damages as they may believe will reasonably compensate her for such injury, not exceeding $10,000."

The question presented for decision is whether, under the circumstances of this case, the appellant was required to hold its train until appellee had time to get seated.  This question, we believe, has never been passed on in this State.

It appears that appellee was a large, fleshy woman, about thirty-five years of age; that she went to the train in company with her son-in-law, who intended to see her off, with two boxes of household goods, six children, ranging in age from eighteen months to twelve years, and a basket. It is alleged in the petition that the customary warning, "All aboard!" was given by the conductor. Appellee states that the train gave a violent jerk while she was upon the platform. This, however, did not cause the injury complained of. It appears from her statement that some of the trainmen assisted some of the children to get upon the train; that her eldest daughter took one child, her son-in-law another, and she carried the baby upon one arm and the basket upon the other. The train officials state that after she had gotten into the car they went forward to the baggage car and saw to putting the two packing boxes on board the car before the signal was given or the start made.

Undoubtedly her injury was not caused by any jolt or jar which the train received while she was on the platform, and the question need not be considered whether such jolt actually occurred or not. The sole question is whether the conductor was required to wait after the passenger was safely inside the car until she had a reasonable time to get seated before putting his train in motion. Undoubtedly it would be negligence for the conductor to start a train while the passenger was obviously in the act of getting on the train; but it has never been held, so far as we are able to find, that, in ordinary cases, the conductor is required to either see that the passenger has reached a seat, or to delay starting his train after the passenger is safely within the

car. And while there are a number of cases in which the carrier has been held liable for injuries resulting from improper stopping and starting of trains, * * * "risks of injury from jolts and jerks ordinarily incident to the movement of trains are risks which the passenger assumes." (Elliott on Railroads, volume 4, section 1589; Choate v. San Antonio & A. P. Ry. Co., 36 S. W., 247.)

As a matter of course the obligation of the carrier is dependent largely upon the circumstances of the particular case; but it seems to us that, although encumbered with six children and a basket, as the appellee had the assistance of her son-in-law in mounting the steps of the train and in managing the children, and one child was of sufficient age and size to render assistance, in addition to that afforded by the trainmen, and as there is no pretense that appellee asked assistance from any officer of the train, there is nothing in this particular case to take it out of the general rule that a train may be started without waiting for the passenger to reach a seat after entering the vehicle, unless there is some special reason to the contrary, as in the case of a weak or lame person (Yarnell v. Kansas City, &c., R. R. Co., 18 L. R. A., 599.) In that case the court quoted, with approval from 2 Shearman & Redfield on Negligence, 4th edition, section 508; "As soon as the passenger has fairly entered the vehicle the carrier may start, without waiting for him to reach a seat, unless there is some special reason for doing so, as in the case of a weak or lame person, or of a passenger on the outside of the coach; and the ground of the exception must be brought to the carrier's notice or he will be justified in starting in the usual manner."

While recognizing the duty of a railroad company to stop its train a reasonable length of time to enable passengers to get on and off, and that it is responsible for injuries caused by unnecessary, unusual and negligent jerking of the train, and that it owes a higher degree of care to a lame or infirm person than to persons in ordinary health, we can not concede that the mere fact of appellee being fleshy and encumbered with a number of children (she having an escort with her), was any sufficient notice to the conductor of an infirmity which required extraordinary care on his part. "Negligence can not be assumed from the mere fact of an accident and an injury." (1 Shear. & Red. Neg., section 59, Wintuska v. L. & N. R. R. Co., 20 S. W., 819.)

We are of opinion, therefore, that, under the circumstances of this case, the court erred in instructing the jury that unless appellee had reasonable time to safely get aboard and get seated she was entitled to recover. It would be proper to instruct the jury, under the facts as they appear in this record, that she was entitled to a reasonable time in which to get safely in the car, and also, if the evidence justified it, an instruction upon the subject of negligent and unusual jerking in starting the train.

For the reasons given the judgment is reversed, with instructions for further proceedings consistent with this opinion.

Judge Guffy dissenting.