## WHATLEY v. MACON & NORTHERN RAILWAY CO.

1. A pauper affidavit can not be filed in the Supreme Court; nor will this court, after a record from a lower court has been completed and the transcript thereof sent here, receive or consider original certificates purporting to have been signed by officials in another State, the purpose of which is to show the official character of the person by whom a paper filed as such an affidavit in the court below was attested.

2. A servant of a railroad company, though he may be, in a general sense, under the duty of obeying the orders of a conductor, is not bound to obey an order when so doing will manifestly subject him to peril. A general order from a conductor to a flagman to "catch" a car will not justify the latter in attempting to do so at a time when the car is moving at an obviously dangerous rate of speed; especially is this so when the conductor, when giving the order, was not aware of the speed at which the car would be running when the flagman was expected to "catch" it, and was not present when the latter attempted to do so

3. The trial court was right in granting a nonsuit.

Argued June 24, — Decided July 19, 1898.

Action for damages. Before Judge Hart. Morgan superior court. September term, 1897.

*G. B. Whatley, McAlpin & LaRoche* and *George & George*, for plaintiff. *Hill, Harris & Birch*, for defendant.

FISH, J. 1. A pauper affidavit, or what purported to be one, was filed in the court below. It appeared to have been made in Aiken county, South Carolina, before the judge of probate of that county, but the official character of the person administering the oath was not authenticated. Under the act of 1870, the official attestation of such an officer to an answer, plea, or other defense would be prima facie evidence, in a court of this State, of his official character. Civil Code, § 5060. But this act only applies to the verification of such matters of defense as the law requires to be sworn to, and leaves the law with reference to other affidavits, made in another State, as it stood before this act was passed. This court held in *Behn & Foster* v. *Young & Co.*, 21 *Ga.* 208, that an affidavit administered in Florida, verifying the statements in a bill for injunction, can not be recognized here, when the official character of the person administering the oath is not authenticated. This decision was followed in *Charles* v. *Foster*, 56 *Ga.* 612, where it was

held: "A claim affidavit and bond, purporting to be executed in another State before a notary public thereof, can not be received by a levying officer in this State without due authentication"; and that, "the seal of the notary public is not authentication; nor is the certificate and seal of the clerk of a court of record, without a further certificate from the judge, chief justice, or presiding magistrate of such court." It follows that no legal pauper affidavit was filed in the lower court. To escape the payment of costs in this court, such an affidavit must be filed in the clerk's office of the trial court (Civil Code, § 5881), "and a certified copy thereof . . transmitted to this court with and as a part of the transcript of the record, or, if no transcript is required, with the bill of exceptions." Civil Code, § 5613; *Thorpe* v. *State*, 92 *Ga.* 470. The plaintiff in error has offered here what purports to be certificates from the clerk and the judge of the court of common pleas of Aiken county, South Carolina, the purpose of which is to show the official character of the person who attested the paper which was filed as a pauper affidavit in the court below. As the affidavit must be filed in the court below, so it must be authenticated there; in other words, it must be in a condition to be recognized and accepted as an affidavit in that court. An attempt is made to vitalize the affidavit here; what it needed was life in the court where the case was tried. Without vitality there, it can have none here. There was no legal affidavit in the lower court, and this court will not receive or consider the certificates offered for the purpose of showing here what ought to have been shown there, viz., that the person who, in South Carolina, attested the paper filed below as a pauper affidavit was an official authorized by the law to do so. The plaintiff in error also sought to file a pauper affidavit in this court, in which he swore that, at the date when the paper filed as such an affidavit in the trial court purports to have been made, he was unable to pay the costs, etc., and that he is still unable to do so. According to a constitutional provision, the pauper affidavit necessary in order to avoid the payment of the costs in the Supreme Court must be filed in the court below. Civil Code, § 5881. What should be brought to this court is not an affidavit, but the legal evidence

of the existence of one in the court from which the case comes. Consequently, this court will not receive or consider an affidavit which has never been filed in that court.

2, 3. There was no error in granting a nonsuit. The plaintiff sued the railway company for injuries alleged to have been sustained by him while in its employment as a flagman on a freight-train, "and subject to do the work of a train-hand, upon the order of the conductor of said train." His evidence showed that at the time when he was so seriously injured he was attempting a perilous performance. He undertook to "catch" a freight-car which was moving at considerable speed, to grasp the ladder on the car and climb to its top, for the purpose of putting on the brakes. If we accept his own theory as to why he fell to the ground and was run over, it appears that when he caught the ladder and attempted to raise his foot into the stirrup for the purpose of climbing up, he was jerked down by the momentum of the rapidly moving car. The plaintiff's witness, Johnson, who seems to have been the engineer of the train, testified: "I kicked the car for Whatley to catch. Did not know it was detached. Had I known it was detached, I would not have kicked it as fast as I did. I kicked it at the rate of seven or eight miles an hour. Car ran about four car-lengths beyond place of accident. A car is kicked in the following manner: uncouple a car from the train or engine, then push it back, and while in motion stop the engine and let the uncoupled car roll on to the place where it is wanted." The plaintiff himself testified: "The cause of my injury was the rate of speed at which the car was going, which I could not ascertain when I went to catch it. It is not customary to send cars back that fast. They are usually sent back slowly, so that you can catch them and put the brakes on." He also testified: "It went four or five car-lengths after it ran over me." We think it is apparent, from this testimony, that any man of ordinary sense and prudence would have known that it was dangerous to attempt to grasp the ladder on a freight-car, moving at the speed at which this car was going, and attempt to ascend to its top; and the plaintiff, who testified that he had been previously employed as a passenger conductor on another railroad and "had been

railroading for some time," certainly must have known it. He says that the cause of his injury was the rate of speed at which the car was going, which, in effect, is to say that it was dangerous to catch and try to mount to the top of a freight-car which, at the time, was moving at such speed. It is true that he says he could not ascertain this rate of speed when he attempted to catch the car. If he could not ascertain it, who could? He was right at it; he saw it moving; he was trying to catch it; his testimony shows that it was not moving slowly, for he says, "It is not customary to send cars back that fast," and that "they are usually sent back slowly, so that you can catch them and put the brakes on." Clearly he was not without fault in the matter. In explanation and justification of his reckless act, he says he was obeying the order of the conductor, who was his superior. Although the conductor ordered him to catch the car, he was not bound to obey this order, if he saw that to attempt to do so would manifestly subject him to peril. *Roul* v. *East Tenn. Ry. Co.*, 85 *Ga.* 197, and cases cited. Besides, the conductor, after ordering this car to be cut loose and directing the plaintiff to catch it, ran to the railroad office to get orders, and was not present when the car was set in motion, nor when plaintiff attempted to catch it, and, therefore, could not have known at what rate of speed it was moving. So it can not be said that the conductor ordered him to catch the car while it was moving at a speed which rendered it dangerous for him to do so. That the court committed no error in granting a nonsuit under the facts disclosed by the plaintiff's evidence, see *Roul* v. *Railway Co.*, supra, and the cases therein cited.

　　　　*Judgment affirmed. All the Justices concurring.*