## SEABORD AIR--LINE RAILWAY *v.* BRADLEY.

1. The petition stated a cause of action, and the demurrer was properly overruled.
2. When one assists a passenger aboard a train at a station, intending not to become a passenger himself but to leave the train after helping the passenger on the cars, no duty arises to hold the train for a reasonable time in order that such purpose may be accomplished, unless knowledge of such purpose is communicated to the company's servants. An instruction to the effect that a railroad company is bound to use ordinary diligence to ascertain the purpose of a person boarding its cars is erroneous, as placing a burden on the company which the law does not impose.
3. It is for the jury to say whether performance or non-performance of a specific act is compliance with the duty which the law imposes upon the carrier under the particular circumstances of each case.
4. An expert may be asked his opinion of a hypothetical case, even though the facts thereof be the same as those of the case on trial.
5. A ground of a motion for a new trial that the verdict is contrary to a specified charge is equivalent to a complaint that the verdict is contrary to law.
6. The charge on the subject of accident was not prejudicial to the defendant.

Argued February 28,— Decided March 28, 1906.

Action for damages. Before Judge Crisp. City court of Americus. March 16, 1905.

Cited, as to alighting from moving train: *Ga. R.* 84/1; 85/197; 85/504; 87/766; 89/455 (1, 2); 92/388; 96/328 (1); 103/570;

104/764(2), 767; 105/237-240; 107/132(3), 138; 108/304; 114/290, 897-9; 118/259, 900; 120/226; 121/317; 124/243. As to duty to one assisting passenger: *Ga. R.* 96/42; 123/394; Hutch. Car. §553a; 5 A. & E. Enc. L. 518.

*E. A. Hawkins,* for plaintiff in error.

*J. A. Hixon* and *Shipp & Sheppard,* contra.

EVANS, J. The petition made the following cause of action: Plaintiff's sister, intending to become a passenger on defendant's train, boarded the train at one of its regular stations. She was accompanied by some small children, and her baggage consisted of two satchels. It was necessary for some one to take the satchels on the train, as the train only stopped long enough for passengers to get on and off the cars at the station, with a reasonable time to put the baggage on the train. Petitioner assisted his sister on the car and placed the satchels in the coach in as hurried a manner and as expeditiously as possible. The conductor, knowing of petitioner's presence on the train and for what purpose he was there, recklessly and carelessly waved the train to start, and caused the train to start after stopping about one half of the usual time it stopped at the station, and before his sister could get a seat and before plaintiff could get off the car. When plaintiff "started to step off the platform or steps to the coach, the train gave a violent and unusual jerk, which caused petitioner to fall to the ground, throwing petitioner on his left side, bruising" and injuring him. The injuries thus inflicted were set out, and alleged to be of a permanent nature. Petitioner claimed damages both special and general. The defendant demurred to the petition, on the ground that no sufficient cause of action was plainly and distinctly set forth in orderly paragraphs, entitling plaintiff to recover; and because the petition disclosed that plaintiff was guilty of negligence, and by the use of ordinary care on his part could have avoided the consequences of defendant's negligence, if defendant was guilty of negligence. The demurrer was overruled, and exceptions pendente lite were taken to the overruling of the demurrer.

1. A railroad company owes to one who boards its train for the purpose of assisting a prospective pasenger and then disembarking from the train, with knowledge of the conductor of his presence and purpose, the duty to observe ordinary care for his safety. This duty would have required the company to delay its train a rea-

sonable time for him to get off. If the conductor signaled the train to start before the escort of the passenger had a reasonable time to alight, and, because of a violent and unusual jerk in starting the train, the passenger's escort was thrown from the car while in the act of alighting and was injured, the company would be liable. *Suber* v. *Ry. Co.,* 96 *Ga.* 42. Applying the principle of this case to the petition, a cause of action was set forth; and as the plaintiff's case was stated in orderly paragraphs, consecutively numbered, there was no error in overruling the demurrer.

2. The case proceeded to trial and resulted in a verdict for the plaintiff. A motion for a new trial was made by the defendant, which was overruled, and the company excepted. On the trial the plaintiff testified that on the day he received his injury his sister, with four small children, went to the station at Leslie for the purpose of taking the train to Cordele. As to what occurred after the arrival of the train at the station, he said: "I taken the satchels and went up in the car, and the conductor came down on the left side and helped my sister and those three children; one of them had never walked. And as the train stopped, I went up on the right-hand side with these satchels, and got eight or ten feet in the train, and put the satchels down and came back out, and as I came back out on the steps the train jerked and pulled out, and I hit the ground about fifteen feet further east than I was figuring on, and it threw me on the left side and sprained that wrist, which I discovered afterwards. . . I saw the conductor when I got on; I was in four or five feet of him. There was nothing at all to keep him from seeing me. I don't know about how many minutes that train usually stopped at Leslie; long enough for all to get on and off and change the mails; usually three or four minutes. I would say he did not stop the usual length of time on this occasion." "As soon as the train stopped, I got on the steps of the forward coach and went right across the platform there to the ladies' coach and went in." "The conductor assisted my sister and the children aboard. I went on in the coach ahead of my sister and went two or three seats down in the coach and placed the baggage and came out on the platform. My sister hadn't got into the coach. I crossed over to the next coach, the same coach I got up on while she was coming up on the steps of the first-class coach, and I passed off the platform ahead of her and she passed in and got out

of my sight. I didn't see her any more. I did not tell the conductor what my business was there; I did not say anything to him at all. I can't say positively whether he saw me." The conductor and other employees of this particular train, and the station agent, denied any knowledge of the plaintiff being hurt on this occasion. By reference to their memoranda of the business transacted while the train was at the station, they testified that the train stopped the usual time. The conductor denied any knowledge of the plaintiff's presence on the train.

As bearing on the duty of the company to the plaintiff under these circumstances, the court charged: "I charge you that under the laws in Georgia it is the duty of the common carrier, that is, a railroad company, to stop at its regular station a sufficient length of time for passengers to get on and off the cars with reasonable safety, which duty the defendant owed to the plaintiff if its agents or employees knew, or by the use of ordinary diligence could have known, that the plaintiff boarded the train to assist his sister on the train, who was to become a passenger." When one assists a passenger aboard a train at a station, intending not to become a passenger himself, but to leave the train after helping the passenger on the cars, no duty arises to hold the train for a reasonable time in order that such purpose may be accomplished, unless knowledge of such purpose is communicated to the company's servants. *Coleman* v. *R. Co.,* 84 *Ga.* 1; *Hill* v. *L. & N. R. Co.,* 124 *Ga.* 243, and cit. "In such cases the duty is dependent upon the knowledge of the carrier, and the negligence upon the non-performance of the ascertained duty." Yarnell *v.* R. Co. (Mo.), 21 S. W. 3. This instruction placed a duty on the company which the law does not impose, viz., to use ordinary diligence to ascertain the purpose of a person boarding its cars. When a person enters a passenger-train, the company's servants may assume that he contemplates becoming a passenger. If his mission is simply to assist a passenger on board the cars, he should inform the company's servants of his purpose, unless the attending facts are sufficient to impute such knowledge to them. There is no pretense that the conductor was informed of the plaintiff's purpose in boarding the train, even if the conductor knew of his presence on the train; nor will the attending circumstances justify the inference of knowledge of the plaintiff's purpose in boarding the train by

any of the company's servants.    Not only did this charge incorrectly state the law, but, under the evidence, it was harmful to the defendant.    The jury were informed that the company was under a legal duty to use ordinary diligence in ascertaining the plaintiff's purpose in boarding the train, and the verdict may have been reached by a finding that while the company's servants. may not have known of the plaintiff's purpose in getting on its cars, yet if ordinary diligence in endeavoring to learn his purpose had been observed, it would have been known to them.

3. The court declined a written request to give in charge the following: "It is not the duty of the conductor of a passenger-train to see that the platform of the coaches of the train is clear of persons, before moving the train from a station."    This request was properly refused, because it is for the jury to say whether performance or non-performance of a specific act is compliance with the duty which the law imposes upon the carrier under the particular circumstances of each case.

4. The court excluded the following testimony of the conductor: "At a station like that, if there was but one passenger to board the train, ordinarily it would take only about a half minute for him to get into the coach from the ground."    The court also refused to allow the conductor to answer the following questions, after being informed of the expected answers: "How long a time was ample for a man to have gone in a train as described, deposit baggage therein, come out again, and get off the train?"    "How long would it take a passenger to get off a train at a station like Leslie?"    The conductor was an expert witness upon the subject as to which he was interrogated, and his testimony should have been allowed.    *Central Ry. Co.* v. *McClifford,* 120 *Ga.* 90.    The court also refused to allow the engineer to answer the question: "How did you move off from Leslie that day, according to your recollection?"    One of the allegations of negligence in the petition was that the plaintiff was thrown from the car by a violent and unusual jerk, and the plaintiff testified that he was thrown from the car because of the train moving off with a jerk.    It was competent for the defendant to disprove this fact, and the court should have allowed the witness to answer the question.

5. Several grounds of the motion complain that the verdict was contrary to certain instructions of the court.    In effect, these are

complaints that the verdict is contrary to law. *Palmer Mfg. Co. v. Drewry,* 113 *Ga.* 366. As the case will be tried over, it is not necessary to discuss these grounds of the motion.

6. The court charged: "If you should believe, after going through the testimony and the law as I shall hereafter give you in charge, that Mr. Bradley was injured and that that injury was the result of an accident, pure and simple—that the railway company was not negligent through its agents and employees, but that it was an accident, pure and simple, then the plaintiff would not be entitled to recover." The error complained of consisted in adding, in connection with the charge on the subject of accident, the words, "that the railway company was not negligent through its agents and employees." The idea of accident excludes responsibility because of negligence, and the court might have omitted the words complained of. But the charge as given could hardly have harmed the defendant.

A new trial is ordered.

*Judgment reversed. All the Justices concur.*