## TURLEY *v.* ATLANTA, KNOXVILLE & NORTHERN RAIL-
## WAY COMPANY.

1. When the agents and employees of a railway company negligently fail to bring the train to a stop at a station where a passenger is entitled to leave the train, and the passenger, perceiving that he is about to be carried beyond his destination, attempts to alight from the car at the usual place of doing so at said station, and, while so attempting to alight, is by a sudden jerk thrown from the steps of the car and injured, he is not precluded from the recovery of damages for such injury, unless he was guilty of negligence himself and his own negligence was the proximate cause of his injuries.

2. To leave a moving train under the circumstances just set forth can not be held to be negligence as a matter of law, unless it appears further that the danger attending the attempt to alight was so great as to be obvious to a person of common prudence and ordinary intelligence. Ordinarily, in cases of this kind, the question of what is or is not negligence is one for the jury.

3. A paragraph of the plaintiff's petition alleging in general terms that "on account of said injuries, petitioner's medical bill, loss of time, and nurse's attention has caused, and is well worth, the sum of $150, and he will continue to have medical attention for a long time to come," was subject to special demurrer upon the ground that "there is no itemized bill or bill of particulars of the medical bill, loss of time, or nurse's attention sued for."

Submitted July 18, 1906.—Decided February 15, 1907.

Action for damages. Before Judge Gober. Cobb superior court. November 28, 1905.

Turley sued the Atlanta, Knoxville & Northern Railway Company, to recover damages for personal injuries alleged to have been sustained in the following manner: "On the 29th day of November 1904, petitioner was a passenger on defendant's passenger train that leaves Marietta, said county of Cobb, about 9.30 o'clock p. m., to go to Blackwell's station on defendant's railway in said county of Cobb. . . When said train arrived in about a half mile of said Blackwell's station, the conductor and porter on said train called out "Blackwell's," meaning thereby to notify petitioner that said train was approaching his destination, and for him to be ready to alight from the same at said station. Petitioner . . immediately left his seat, went to the platform of the car, got on the lower step of the same as the train began to slow up, preparing to immediately alight from the train as soon as it stopped. The train slowed down, and when the rear end of said coach that peti-

tioner was on reached the public crossing at said station, which is the place where said train always stops for passengers to alight at said station, said train was running at about from four to five miles per hour. At this time petitioner was on the lower step of said coach, holding to the guard rails, preparing to alight from the train when it stopped, but the train did not stop, and immediately began to increase its speed, and petitioner, to avoid being carried beyond his said destination, and availing himself of the opportunity that was offered him to alight, endeavored to get off of the car while it was in motion and going at the rate of about four to five miles per hour as aforesaid, at the regular place for stopping at said station. Just as petitioner was about to step from the coach, with one foot on the lower step and the other being lowered to the ground, said train gave a sudden, quick jerk, causing petitioner to lose his balance and causing him to be thrown violently and with great force against the rail and cross-ties of the side-track on said crossing." The defendant filed both a general and a special demurrer. The court sustained the same, and the plaintiff excepted.

N. A. Morris, for plaintiff. Clay & Blair, for defendant.

BECK, J. (After stating the facts.)

1, 2. Whether it is negligence or not for a passenger to leave a moving train can not in every instance be decided as a matter of law. If it appears that at the time of a person's leaving a moving car it is obviously dangerous for him to do so, on account of its having attained a high rate of speed, the court might, as a matter of law, hold that in voluntarily leaving the car, such person was guilty of such negligence as would preclude a recovery of damages for injuries received in alighting under those circumstances. In the present case, when the plaintiff left the train it was moving at the comparatively slight speed of between four and five miles an hour. And because of that fact, it is easily distinguishable from several cases cited in their brief by counsel for defendant. Discussing the precise question which we have before us in this case, Judge Thompson, in his Commentaries on the Law of Negligence, stated his views as follows: "It may therefore be affirmed, on the one hand, that where a train stops at a station to which the company contracts to carry a passenger, the company is liable if reasonable time to leave is not afforded, and the passenger is injured in an attempt to leave after it has started, and while in motion, if he

does not, in getting off, incur a danger obvious to the mind of a reasonable man; and on the other hand that, although the company has failed in its duty of stopping the train at the station for a reasonable time to allow the passenger to alight, yet if he attempts to do so after the train has acquired such a rapid motion as to make it obvious, to a man acting reasonably under the same circumstances, that an attempt to alight would be attended with danger, he can not make the negligence of the company a ground for recovering damages from it in case he is hurt." 3 Thomp. Neg. 344. In the present case it is true the train did not come to a stop at the place at which passengers usually left the train for the station, which was plaintiff's destination, but after coming almost to a stop the train began to increase its speed, and was "going at the rate of about four to five miles per hour," when the plaintiff attempted to alight, and having one foot on the step of the car, and the other being lowered to the ground, in consequence of the train's giving a "sudden, quick jerk," he was thrown violently to the earth. In so far as his right to recover is concerned, the plaintiff's case here can not differ materially from that of a passenger who, because his train has not stopped a sufficient time to permit him to alight, attempts to do so after it is again in motion and has attained a speed equal to that at which the train in the present case was going. That the defendant company was negligent in not causing the train to come to a full stop, and to remain so until the passenger had alighted at the station to which his ticket entitled him to be carried, is beyond question; and the further question, as to whether or not, in causing the train to move with a quick, sudden jerk just as it was passing the usual place for passengers to alight, the company was not guilty of another act of negligence, which resulted in injury to the passenger, should have been submitted to the jury.

We can not agree with counsel for the defendant, who insist that the plaintiff "knew the train was running at a speed that made it hazardous to attempt to alight therefrom in the prevailing darkness," and "knew more than this, that the train was not stopping, but was increasing its speed; and, with this situation clearly before him, 'chose not to avoid, but to risk the danger,'" and that consequently the plaintiff's injury was not the result of the defendant's negligence, but of his own recklessness. We admit that coun-

sel are fortified in this position by the language of the decision in the case of *Simmons* v. *Seaboard Air-Line Railway,* 120 *Ga.* 225, and possibly by the ruling in that case upon the issue. involved; but if that decision conflicts with rulings made in this case, it must yield to older decisions, by whose rulings we are controlled in the adjudication of the cause under consideration. In the case of *Suber* v. *Railway Co., 96 Ga.* 42, the plaintiff entered a car for the purpose of assisting his children upon one of the regular passenger trains of the defendant company, and, when they were seated, started to get off, but the train began moving before he could do so. He proceeded down the steps to the platform and was about to step off, when the train gave a sudden jerk, which caused him to fall. The train was moving at the rate of about three miles an hour. The conductor knew the purpose for which the plaintiff· had entered the car. The stop of the train at the station was shorter than usual, and it was put in motion without giving the usual signals. These facts appeared on the trial of the case, in the testimony of the plaintiff, and, upon motion of the defendant, a nonsuit was granted; and it was there held, that "the court erred in granting a nonsuit. It is not necessarily, as matter of law, negligent for a person to leave a moving train. Whether it is negligent or not in a particular case must depend upon the circumstances of danger attending the act and the special justification which the person leaving the train had for doing so. Ordinarily, in cases of this kind, the question of what is or is not negligence is one for the jury; and unless the danger is obviously great,—as where the train is moving at full speed,—the court cannot hold that leaving the train is, as a matter of law, such negligence as should preclude a recovery." In the case last cited, in the opinion delivered by Chief Justice Simmons, authorities are cited sustaining the position taken, and several of the cases on the brief of counsel for the defendant in the instant case are referred to and distinguished. It is impossible for us, upon its material facts, to distinguish the *Suber* case from the one that we are considering. It is true that it does not appear in the *Suber* case whether it was day or night when the plaintiff alighted from the moving train, and the speed in that case was only three miles per hour, and in this case was between four and five miles. But these minor differences are not so material and important as in

the one case to make the question of the plaintiff's negligence one of fact for the jury, and, in the other, one of law for the court.

Judge Thompson, in the same paragraph that we have cited above, quotes approvingly the following extract from the dissenting opinion of Chief Baron Kelly in the case of Siner *v.* Railway Co., L. R. 3 Exch. 150, 156: "I am clearly of opinion, however, that a railway company are not entitled to expose any passenger to the necessity of choosing between two alternatives, neither of which he could lawfully be called on to choose, namely, either to go on, or to take his chance of danger and jump out; and if they do so, the choice is made at their peril. I agree that if it can be clearly seen by the passenger that the act must be attended with injury, it may then be fairly contended that he is not entitled to choose this obviously and certainly dangerous alternative. . . Yet when he is called upon to choose between two evils to which the neglect of the company has exposed him, and one of which presents some degree of danger, but not such as he may not without imprudence encounter, if in consequence of his adopting that alternative he suffers any injury, that injury is the proper subject of an action against the company." And this the learned text-writer says "is probably now recognized as the more correct exposition of the law than the views of the majority of the court in that case." Many cases are cited in the note to this paragraph, in which the language of Chief Baron Kelly is approved. And the same doctrine is laid down and numerous cases collected in American Negligence Cases, where there are also to be found many decisions laying down a contrary doctrine. And in the latest edition of Hutchinson on Carriers, § 1179, after having shown that the question under consideration has been decided differently by different courts, the author concludes that "the weight of modern authority seems to sustain the view that an attempt by the passenger to alight from a railway train while it is passing a place at which it should stop to enable him to alight, or at which it has failed to stop a reasonable time to permit him to leave it, will not, as a matter of law, be considered a negligent act unless the attending circumstances so clearly show that he acted imprudently or rashly that reasonable minds could fairly arrive at no other conclusion, and that the question whether the act of the passenger in so attempting to alight from the train was negligent, that is, whether he exercised for his

safety that degree of care and caution which a person of ordinary prudence would be expected under like circumstances to exercise, must ordinarily be submitted to the jury." 3 Hutch. Carriers (3d ed.), 1377, §1179.

3. The ground of the special demurrer, pointing out the defects of paragraph 8 of plaintiff's petition, should have been sustained, as ruled in the third headnote.

The other grounds of the special demurrer were without merit.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*