### 3704. SOUTHERN RAILWAY CO. *et al. v.* PARHAM.

1. It is not, as a matter of law, negligence to leave a moving train, unless it clearly appears that the danger in attempting to do so is obvious to a person of common prudence and ordinary intelligence; and whether the attempt to get off, or the alighting from a moving train is negligence is generally a question of fact for the jury.
2. One who goes upon a train for the purpose of assisting a lady and her young children who intend to become passengers thereon is in no sense a trespasser, but is a licensee, and when his presence thereon and his purpose to get off become known to the employees of the railroad company in charge of the train, he is entitled to the duty of ordinary diligence on their part.
3. A witness who testifies as a medical expert can not be impeached by showing that in other cases he had made mistakes in his diagnosis. Testimony as to his general reputation, and not as to his success or failure in special cases, is admissible for the purpose of impeachment.
4. The trial judge should only charge principles of law applicable to the issues made by the pleadings and evidence; but where the judge charged a correct abstract principle of law not required by the pleadings, but injected into the case by the defendant, on which evidence had been introduced by both sides without objection, and in this connection distinctly instructed the jury that the plaintiff could only recover on the allegations of the petition, the error was immaterial and harmless.
5. In a suit brought against a railroad company to recover damages for

personal injuries caused by the running of its "locomotive or cars," where an employee was joined as codefendant, it was not erroneous for the trial judge to charge the jury on the statutory presumption against the railroad company, and to fail to charge that such a presumption did not arise against the individual codefendant, in the absence of a specific timely request to do so.

6. As a general rule no exact method of measuring damages is laid down. In cases of permanent injuries, the jury may, but are not compelled, to adopt and use the mortality tables as a basis of calculation. The jury should give such compensation by their verdict as would be just and reasonable to both parties, and, in arriving at this standard, may consider the evidence on the subject, in the light of experience and common sense.

7. Trial courts have not only the right, but it is their duty, to correct any erroneous instructions, and court and counsel should co-operate to prevent injustice through erroneous instructions. It can not be erroneous for the court, after having charged the jury, to call attention to certain parts of the charge as incorrect, and to withdraw those parts from their consideration.

8. Testimony as to involuntary exclamations manifesting the existence of pain is admissible. Such exclamations are symptomatic, a part of the res gestæ, and not self-serving declarations, and the evidence relied upon to prove them is not hearsay.

9. No material error of law appears, and the evidence supports the verdict.

DECIDED FEBRUARY 12, 1912.

Action for damages; from Elbert superior court—Judge Meadow, July 29, 1911.

*A. G. & Julian McCurry, Thomas J. Brown,* for plaintiffs in error.

*Smith, Hastings & Ransom,* contra.

HILL, C. J. Parham sued the Southern Railway Company for injuries sustained by him on alighting from a train, joining as codefendant the conductor of the train, and recovered a verdict for $3,750. The defendants' motion for a new trial was overruled, and the case is here for review. The evidence in behalf of the plaintiff is, in substance, as follows: On the date alleged in the petition the plaintiff went to the depot of the railway company at Dewy Rose, a station in Elbert county, for the purpose of assisting a lady and her two little children, who intended to take passage on the train. It was night, and one of the children was asleep, and the plaintiff took the child in his arms into the car. The train stopped a shorter length of time than usual, and before the plaintiff could place the sleeping child on a seat, the train started, although he acted with all possible promptness. When the train started, the plaintiff, after

placing the child on the seat, hurried to the platform of the coach to get off. A negro porter of the railway company was standing on the steps of the coach from which the plaintiff expected to alight, and was blocking the steps so that the plaintiff could not get off at that point. The conductor of the train, the individual defendant in the case, cursed the porter for blocking the steps, and called to the plaintiff to cross over to the platform of the next coach and to leave the train from that point. At the depot at Dewy Rose there was no wood platform, but the ground between the adjoining tracks was leveled up even with the rails, forming a smooth dirt landing, extending a little on each side of the depot. Beyond this dirt landing, in the direction in which the train was going, there was a ditch on each side of the railroad and an embankment across the ditch. The plaintiff attempted to leave the train under the direction of the conductor and at the point where the conductor directed him to get off. It was dark at the time, and the plaintiff could not see that the train had passed the dirt platform, and could not tell the speed that the train had acquired. He relied upon the directions given to him by the conductor, assuming, because of such directions, that it was safe to leave the train at that point. The train had passed the dirt platform above described and was running faster than the plaintiff had supposed. The train was a light train, consisting of only two coaches and an engine, and, because of being behind its schedule time, acquired considerable speed in a short space of time, and could move very much farther than an ordinary railroad train in the time taken by the plaintiff. When the plaintiff attempted to alight he stepped into the ditch above referred to, and, because of stepping into the ditch and because of the speed of the train, was given a violent wrench and was thrown against the embankment, and received the injuries for which he sought to recover damages.

The evidence for the defendants conflicts sharply with the evidence of the plaintiff, both as to how the accident occurred and as to the extent of the injuries received. The conductor testified, that he did not see the plaintiff, did not know that he had gotten on the train for the purpose of assisting passengers, did not give the plaintiff any direction to cross from the platform of one coach to the platform of another, or to get off at that point, and did not curse the negro porter, and, in short, contradicted every statement made

by the plaintiff as to the manner in which the injuries were received, and also denied the existence of any ditch at that place, and said that the train had stopped an unusual length of time that night at Dewy Rose, and that the plaintiff had ample time in which to go into the coach and get off without injury, in the exercise of ordinary diligence. The conductor's evidence is corroborated by other employees of the company. According to the evidence of the plaintiff and expert testimony in his behalf, he received very severe and probably permanent injuries. According to the testimony for the defendants, both lay and expert, he received very slight, if any, injuries. This court will not discuss the evidence except as it may be necessary to do so to illustrate the rulings on special assignments of errors of law. The verdict settles the conflicts in the evidence, and, so far as this court is concerned, establishes the truth of the testimony in behalf of the plaintiff, not only as to the manner in which he was injured, but also as to the extent of his injuries, and, unless the trial judge committed a material error on some question of law, which was presumptively prejudicial to the defendants, the verdict will not be disturbed.

1. It is insisted by the plaintiffs in error that even conceding the truth of the evidence in behalf of the plaintiff, the verdict is contrary to law, because it shows such negligence on his part as would preclude him from a recovery; that his act in getting off the moving train in the dark was so obviously dangerous that he was not relieved from negligence in attempting to do so, even under the directions given him by the conductor. It is contended that to get off a moving train in the dark and at a place other than the platform or regular place of getting off is per se such an act of negligence as would in any event prevent a recovery. Many cases are cited from the Supreme Court of this State in the elaborate brief of counsel for plaintiffs in error, which it is claimed sustain this view of the law, some of them being *Jones* v. *Georgia, Carolina & Northern R. Co.*, 103 *Ga.* 570 (29 S. E. 927) ; *Barnett* v. *East Tenn., Va. & Ga. R. Co.*, 87 *Ga.* 766 (13 S. E. 904) ; *W. & A. R. Co.* v. *Earwood*, 104 *Ga.* 127 (29 S. E. 913) ; *Whatley* v. *Macon & Northern R. Co.*, 104 *Ga.* 764 (30 S. E. 1003) ; *Roul* v. *East Tenn., Va. & Ga. R. Co.*, 85 *Ga.* 197 (11 S. E. 558), and many others. It would be unprofitable to consider each one of these cases. It is sufficient to say that we have examined each one and find that none of them sus-

tain the view urged by learned counsel. Nowhere does the Supreme Court lay down the proposition of law that, regardless of the facts, it is such negligence on the part of a passenger or licensee to leave a moving train as would preclude a recovery. The question of negligence in each particular case is one of fact which must be determined by the jury alone, and the court can not, as a matter of law, lay down any inflexible rule on the subject. In the present case the negligence on which a recovery is predicated is the negligence of the conductor in telling the plaintiff to get off a moving train under the circumstances proved by the plaintiff. It must be remembered in this connection that while the plaintiff was not a passenger, neither was he a trespasser. He was lawfully on the train for the purpose of assisting a woman with two infant children, who were passengers thereon. Conceding that the railway company was under no duty to anticipate his presence on the train, or to foresee his purpose to leave the train, yet when his presence and his intention became known to the employees of the company, it was their duty to exercise ordinary care to prevent his injury. The principles of law embraced in the foregoing statement are well settled by repeated decisions of the Supreme Court of this State. In *Suber* v. *G., C. & N. R. Co.,* 96 *Ga.* 42 (23 S. E. 387), it is held that a person going upon a train to assist his sister and her children, who expected to become passengers, was lawfully on the train, and, when his presence was known, was entitled to the duty of ordinary care on the part of the employees of the railway company. And in the case of *Macon, Dublin & Savannah R. Co.* v. *Moore,* 108 *Ga.* 84 (33 S. E. 889), the *Suber* case, supra, is cited with approval, and the doctrine reaffirmed that a person on a train under such circumstances is there lawfully, and is entitled to ordinary care by the employees of the railway company, when his presence becomes known. In the case of *Seaboard Air-Line Railway* v. *Bradley,* 125 *Ga.* 193 (54 S. E. 69, 114 Am. St. R. 196), the *Suber* case is again approved and the doctrine therein stated reaffirmed. These decisions establish that the plaintiff was lawfully upon the train, and that when the conductor discovered his presence, and his purpose to leave the train, the duty of exercising ordinary care devolved upon him to prevent injury to the plaintiff. Whether the conductor did so under the facts proved in behalf of the plaintiff was a question for determination by the jury. Under these facts it was the prov-

ince of the jury to say whether the act of the conductor in directing the plaintiff to leave the train at that time and place was or was not an act of negligence, or whether, under the circumstances, the danger of doing so was so manifest and clear that notwithstanding the directions of the conductor, the plaintiff was guilty of such negligence in attempting to alight at that time and place as would prevent a recovery. If the conduct of the conductor was negligent, and if the obedience to the directions of the conductor was not negligence of a culpable character, then these facts, under the law, would have authorized a recovery. This proposition is conclusively established by repeated decisions of the Supreme Court. *W. & A. R. Co.* v. *Wilson,* 71 *Ga.* 22; *Southwestern R. Co.* v. *Singleton,* 67 *Ga.* 306; *Coursey* v. *Southern Ry. Co.,* 113 *Ga.* 297 (38 S. E. 866). In the *Coursey* case the plaintiff had, by mistake, gotten upon the wrong train. Upon discovering that fact she told the conductor of her mistake, and, after the train was leaving, she was directed by him to get off. Obeying this direction she was hurt. The sole negligence alleged in the petition was the negligence of the conductor in telling her to get off. The court below granted a nonsuit, and the Supreme Court reversed this judgment, holding that it was a question of fact. In *Turley* v. *A., K. & N. R. Co.,* 127 *Ga.* 594 (56 S. E. 748, 8 L. R. A. (N. S.) 695), it is held, in effect, that it is not, as a matter of law, negligence to leave a moving train, unless it appears that the danger attending the attempt to alight is so great as to be obvious to a person of common prudence and ordinary intelligence, and that ordinarily, in cases of this kind, the question of what is or is not negligence is a question for the jury. In the *Turley* case, Mr. Justice Beck, speaking for the court, says: "We can not agree with counsel for the defendant, who insist that the plaintiff 'knew the train was running at a speed that made it hazardous to attempt to alight therefrom in the prevailing darkness,' and 'knew more than this, that the train was not stopping, but was increasing its speed; and, with this situation clearly before him, chose not to avoid, but to risk the danger,' and that consequently the plaintiff's injury was not the result of the defendant's negligence, but of his own recklessness." The case of *Simmons* v. *S. A. L. Ry.,* 120 *Ga.* 225 (47 S. E. 570), which apparently supported the proposition contended for by the plaintiffs in error was expressly overruled, and it was announced that the *Suber* case,

supra, stated the correct rule on the subject. We conclude that the contention of the plaintiffs in error on the points above discussed is not supported by the decisions of the Supreme Court, and the proper rule on the subject, deduced from all the decisions, is that the question of negligence is one of fact, to be determined by the jury under the circumstances of each particular case.

2. A medical expert, introduced by the plaintiff, testified as to the character and extent of the plaintiff's injuries. The defendants introduced a witness by whom they sought to impeach and discredit this medical expert by showing that on a previous occasion he had examined this witness and had stated that the witness was suffering from spinal concussion or "railway spine," the same diagnosis which the expert had made of the plaintiff's injuries,—when in fact the witness had never been in a railroad accident and had never suffered from any spinal trouble. This testimony was excluded by the court. We hardly think that the value of the testimony of a medical expert can be impeached by instances of special cases in which he might have been mistaken in his diagnosis. To hold this, it seems to us, would bring in issue the question as to whether in each particular case the diagnosis was correct or incorrect. The correct rule is laid down by Mr. Wigmore, in his work on Evidence, Vol. 2, p. 1148: "Proof of such particular instances of error by other witnesses is generally regarded as inadmissible, and for reasons analogous to those of the character rule, namely, confusion of issues by the introduction of numerous subordinate matters, controversies involving comparatively trivial matters, and unfair surprises by leaving the impeached witness unable to surmise the tenor or the time of the supposed conduct which might be attributed to him by false testimony." While it might strike the ordinary mind that a medical expert could not be safely relied upon in his diagnosis, where he had stated upon an examination that a person was suffering from spinal concussion or "railway spine," when in fact the person had never been the victim of any railroad accident, or had never suffered from any spinal complaint, and while it might be argued that this medical expert, in making a similar diagnosis of the plaintiff's injuries, was indulging somewhat in a fad or a favorite theory, yet it must be manifest to any thinking mind that it would be unsafe, as well as unjust to the medical expert, to allow such special method of attack, unless at the same time

the expert thus attacked were allowed an opportunity of meeting the attack, by showing that the witness who testified that he was not injured had been in fact injured, and was testifying falsely, and that as a matter of fact his diagnosis of the witness's condition was correct. In the administration of practical justice by the courts this method of impeachment should not be permitted.

3. In support of the medical expert who testified in behalf of the plaintiff, testimony, to which the defendants objected, was admitted, to the effect that the expert had held many positions in different sanitariums and hospitals where he had had extensive experience in medicine and surgery. One of the methods of proving expert knowledge is to show expert opportunities and experience, and clearly the testimony was admissible for this purpose.

4. Two of the grounds in the amended motion for a new trial assign error upon the charge of the court to the effect that the railway company was under a legal duty to allow the plaintiff a sufficient time in which to get off the train, after his intention to leave had become known to the conductor. It is contended that this charge was hurtful to the defendants, and was not on any one of the issues made by the pleading, as no negligence was alleged in this respect. An inspection of the brief of evidence discloses that the defendants contended that the plaintiff did have time to get off the train, and that the railway company in this respect performed its duty; and this testimony was met by the plaintiff by showing that he was not given sufficient time in which to get off. No objection to the introduction of this evidence was made by either side on the ground that it was not covered by the pleading. The judge stated a correct abstract principle of law, and, while the instruction was not required by the pleading, it was based on evidence introduced on both sides. Consequently it was not reversible error to charge on the subject, and certainly the defendants should not be heard to complain that the charge covered an issue which they had injected by their evidence. However, the court subsequently instructed the jury that the plaintiff could only recover upon the allegations of negligence made in the petition.

5. Objections are made to instructions of the court as to the presumption against a railroad company on proof of injury, and to the failure to charge that this presumption did not arise against the individual defendant. As to the railway company the charge

on this subject is based upon the statutory presumption. Civil Code (1910), § 2780. It is insisted that even as against the railway company, this charge was improper, as the plaintiff was not hurt by "the running of the locomotive, cars, or machinery" of the railway company. We do not concur in this opinion. It would be entirely too restricted a view to take of the statute, and would limit its application to cases where persons were hit or run over, or came in physical contact in some other way with the locomotive, cars, or machinery of the defendant while they are actually in movement. The statutory presumption applies to injuries received by persons alighting from trains or locomotives. The momentum imparted to the body of a person alighting from a moving train, which throws him against an obstacle on the outside, is as much a cause of the injury as the violent contact with the obstacle or obstruction. The case of *Georgia Ry. & Electric Co.* v. *McAllister*, 126 *Ga.* 447 (54 S. E. 957, 7 L. R. A. (N. S.) 1177), relied upon by the plaintiffs in error, is not in point. In the *McAllister* case the plaintiff had actually left the car, had crossed to the sidewalk, and was walking home when the injury occurred. In other words, he had severed all connection with the operation of the streetcar when he was hurt. In *Georgia Railway & Electric Co.* v. *Reeves*, 123 *Ga.* 697 (51 S. E. 610), and *S. A. L. Ry.* v. *Bishop*, 132 *Ga.* 71 (63 S. E. 1103), it is clearly ruled that a person injured in alighting from a moving train, or even from a stationary train, by the running of the company's locomotive, cars, or machinery is entitled to the statutory presumption.

As to the objection that the court did not instruct the jury that this presumption did not apply to the individual defendant: The court did tell the jury that it applied to the railway company, and, under the maxim expressio unius est exclusio alterius, this was in effect telling the jury that it did not apply to the individual defendant. In the usual general statement made in the charge on the subject of presumption, the court did charge the jury the general rule that the burden was upon the plaintiff to make out his case against the defendants, and the only exception stated was the presumption against the railway company. Assuming that the jury were men of ordinary intelligence, they must have understood, from this statement and the exception, that the presumption applied only to the railway company, and not to the individual defendant. How-

ever this may be, we think that if he desired a more specific charge on this subject, he should have requested it in writing.

6. The following excerpt from the charge is objected to: "If you are in possession of facts that will authorize you to estimate in dollars and cents any branch of injury received, the loss of ability to work or otherwise, you can fix that amount at whatever the testimony authorizes for damages along that line." It is objected that this charge did not present to the jury any fixed and certain rule by which the damages should be estimated, and, in elaborating this ground of the motion, learned counsel insist that it was the duty of the judge to charge as to the use of the mortality and annuity tables, and that the judge erred in failing to charge as to reducing to its present value the plaintiff's entire future loss. It has been held by the Supreme Court that the jury, in estimating damages, are not compelled to use the mortality and annuity tables, and the court is not required to give them in charge unless requested. In the standard charge prepared by the Supreme Court in *Florida Central & Peninsular R. Co.* v. *Burney*, 98 *Ga.* 1 (26 S. E. 730), it is expressly stated that these tables are not binding on the jury. The jury are at liberty, in estimating the damages, to use the result of their own observation and experience, aided by the testimony as to the extent of the injuries and the resulting damages. *R. & D. R. Co.* v. *Allison*, 86 *Ga.* 145 (12 S. E. 352, 11 L. R. A. 43); *Southern Ry. Co.* v. *Scott*, 128 *Ga.* 244 (57 S. E. 504). The size of the verdict in the present case would indicate either that the jury did in fact reduce the future damages to present value, or did not consider the question of permanent damages at all. Without a more specific request to charge on the subject of damages, the general charge as given was not prejudicial.

7. After the court had concluded the charge to the jury and had directed them to retire and make up their verdict, counsel for the plaintiff arose, and in the presence of the jury suggested that a certain portion of the charge, according to the practice in the United States court, be corrected, whereupon the judge sent the jury out, and, after an argument in regard to this part of the charge, had them return, and corrected his charge on the subject of punitive damages, distinctly and expressly withdrawing from their consideration this portion of the charge, as not applicable to the case, under the evidence. Of course, this part of the charge was inappli-

cable to any of the issues made by the pleading or the evidence, and the court very properly corrected it on suggestion of counsel for the plaintiff. It is immaterial that in doing so he followed a practice pursued in the United States court, and it is wholly immaterial that in the presence of the jury counsel for the plaintiff asked him to do so according to the practice in such matters in the United States court. The only material question was, was this portion of the charge erroneous? If it was, it was the duty of the court to correct it, and as to that matter it would seem to have been the duty of counsel to acquiesce in the correction. Judges rely upon attorneys in a case to aid them in giving proper instructions on the issues submitted, and to assist them in preventing as far as possible any injustice through erroneous instructions.

8. The court admitted, over objection of the defendants, the evidence of the plaintiff's wife that after his injuries had been received he was heard to "moan and groan" frequently during his sleep. It is objected that this testimony was irrelevant, and that the moaning and groaning took place long after the accident. It has been held that involuntary exclamations of pain made soon after an injury has been received are to be regarded not as self-serving declarations, but as symptoms, and are admissible in evidence. *Georgia Ry. & Electric Co.* v. *Gilleland,* 133 *Ga.* 621 (66 S. E. 944). It would seem to follow that as long as the injured person was still suffering from the effect of injuries which he had received, any involuntary exclamation made by him, indicating that he still suffered from the effects of such injuries, would be admissible for what they were worth. Whether the moans and groans of a man in his sleep are caused by pain due to physical injuries or not, it certainly can not be claimed that they are in any sense self-serving declarations. They would seem to be more in the nature of subjective symptoms of physical suffering. Certainly, where the evidence is clear, irrespective of this moaning and groaning while asleep, that the plaintiff had incurred injuries of a severe character, it would be absurd to grant a new trial on the ground that the court had erred prejudicially in admitting evidence of these involuntary exclamations made by the plaintiff while asleep.

We have examined the record very carefully in connection with all the assignments of error, and we find no reason for reversing the judgment refusing another trial.          *Judgment affirmed.*