### 7113. DAVIS *v.* SAVANNAH UNION STATION COMPANY.

BROYLES, J. Under the plaintiff's testimony (the only testimony introduced), it was not error for the court to grant the defendant's motion for a nonsuit.          *Judgment affirmed.*

DECIDED JUNE 23, 1916.

Action for damages; from city court of Savannah—Judge Davis Freeman.   December 7, 1915.

Mrs. Davis fell when attempting to alight from a passenger-car of a train of the Atlantic Coast Line Railroad Company in the Union Station at Savannah; and she sued the Union Station Company for damages on account of injuries resulting from the fall.   In her petition it was alleged, that the defendant owned and operated the Union Station, and had charge of the operation of all trains of the Atlantic Coast Line Railroad Company while in the station; that when her son and his family, went to the train to go to Waycross she accompanied them to the Union Station; that it was necessary for her to go upon the train to assist them with their bundles and to assist her daughter-in-law with the children, and for this purpose, which she stated to the defendant's watchman at the gate of the station, she was permitted to enter; that as she entered the train the conductor of the train was standing at the steps and she informed him that she was entering the train for this purpose; that a porter of the train was in the car when she entered and when she retired from it; that the time for the

train to leave was about 7:40 o'clock and she boarded the train about 7:25 or 7:30 o'clock; that after her daughter-in-law and children were seated and the packages deposited, she started to leave the train in full view of the porter, and when she reached the steps of the car the engineer in control of the train started the train with a sudden, violent, unusual, and unnecessary jerk, which threw her to the ground, breaking her arm and bruising her; that she had no notice or warning that the train was going to start; and that her injuries were caused by the negligence of the defendant in starting the train in this manner, and without such warning. The defendant, in its answer, admitted that it had charge of the operation of the trains in the Union Station.

As to what occurred at the station the plaintiff testified as follows: "When we reached the gate to the Union Station Company I asked the gateman . . would he please let me go through to the train to help my son with the bundles, and he said 'Yes.' . . The conductor or flagman—some one in uniform—was there at the car when we reached there, and I said, 'I will be back,' or 'will come back.' . . I entered the train and stayed there three or four minutes until they could get seated. When they got comfortably seated I then started to get off. My son and daughter-in-law could not by themselves have carried the bundles. Mr. Johnson went on the train with me. He started out of the train first, preceding me three or four steps, something like that. I followed just behind him. He got off the train safely. When I started to leave the train I got on the steps and put my hand out and got hold, and my foot was on the last step, and when I was about to make that the train gave a terrible jerk, sudden jerk, and threw me off on the sidewalk. . . My son and daughter did not have any children with them at that time. My petition states that I told the conductor who was standing at the steps that I was going on the train to assist my daughter-in-law with her bundles and children. That is a mistake. I said, 'I will be back.' Besides my daughter-in-law was with her husband and her father. . . When this train started up and I was thrown off it was not going to Waycross. It had to pull down and then back back to put up the sleeper. It had not picked up the sleeper when I got off. . . I knew that train was going to pull out and pick up a sleeper before it left for Waycross. I did not know it was going to move

when I got off. None of the railroad people were at the foot of the steps when I was getting off. I don't suppose that any of them knew I was going to get off at that time. There was no bell or signal or warning of any kind given at that time,—none that I heard." There was evidence as to the extent of the plaintiff's injuries, loss of earnings, etc.

*Osborne, Lawrence & Abrahams,* for plaintiff, cited: *Suber* v. *Georgia, Carolina &c. Ry. Co.,* 96 *Ga.* 42; L. & N. R. Co. *v.* Crunk, 119 Ind. 542 (41 Am. & Eng. R. Cas. 158) ; 4 Ruling Case Law, 1053-4, art. 503; notes in 10 Am. & Eng. Ann. Cases, 161; *Sou. Ry. Co.* v. *Parham,* 10 *Ga. App.* 531 (2) ; *Killian* v. *Georgia R. Co.,* 97 *Ga.* 732; 10 Michie's Dig. Ga. R. 766-7.

*Anderson, Cann, Cann & Walsh,* for defendant, cited: *Central R. Co.* v. *Perry,* 58 *Ga.* 462 (6) ; s. c. 66 *Ga.* 746-51; *Ga. R. Co.* v. *Friddell,* 79 *Ga.* 489; Civil Code of 1910, § 2229; *Seaboard Air-Line Ry.* v. *Bradley,* 125 *Ga.* 193; *Coleman* v. *Ga. R. Co.,* 84 *Ga.* 1; *McLaren* v. *A. & W. P. R. Co.,* 85 *Ga.* 504; *Georgia, Carolina &c. Ry. Co.* v. *Hutchins,* 121 *Ga.* 317; *Blodgett* v. *Bartlett,* 50 *Ga.* 353, 357; *Ball* v. *Mabry,* 91 *Ga.* 782, 784; *L. & N. R. Co.* v. *Edmondson,* 128 *Ga.* 482; 4 Elliott on Railroads (2d ed.), sec. 1589, p. 403; Choate *v.* San Antonio R. Co., 90 Tex. 82; L. & N. R. Co. *v.* Hale, 102 Ky. 600; *A. & W. P. R. Co.* v. *Dickerson,* 89 *Ga.* 455.