## Illinois Central R. R. Co. v. Ball.

### Same v. Ball, By, et al.

(Decided November 13, 1912.)

### Appeals from Muhlenberg Circuit Court.

1. Railroads—Passenger Entering Car—Injury to Passenger—Care and Precaution On Part of Those In Charge of Car.—In ordinary cases a railroad conductor is not required to either see that the passenger has reached a seat, or to delay starting his train until after the passenger is safely within the car; but, as soon as the passenger has fairly entered the car, the carrier may start, without waiting for him to reach a seat, unless there is some special reason for doing so, as in the case of a passenger who is old, feeble, crippled, or in a condition which makes it reasonably apparent to those in charge of the car, that the passenger needs unusual care and precaution for his protection.

2. Railroads—Injury to Passenger While Boarding Car.—A different rule prevails where the passenger is injured while boarding the car, and before he safely reaches the platform. In such cases the

car should not be started until the passenger has secured a safe footing.

3. Railroads—Passenger Entering Car—Injury to Passenger—Instructions.—The question whether a passenger was allowed a reasonable opportunity to take a seat in a car before starting it, is a question for the jury; and, an instruction which declared, as a matter of law, that it was the duty of the carrier to keep its train standing at the platform a sufficient length of time to give the passenger reasonable opportunity, not only to get upon the car, but to secure a seat therein, was erroneous.

C. L. SIVELY, TAYLOR & EAVES, TRABUE, DOOLAN & COX and BLUETT LEE for appellant.

HOWARD & GRAY and YOST & LAFFOON for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

These two actions for personal injuries, arose out of the same accident; and, having been consolidated, they were tried together by a single jury. The controlling facts are as follows:

On August 12, 1911, the appellee, Mrs. Lou Ball, and her infant daughter, Beulah Ball, a child about three years of age, traveled upon appellant's train from Central City to Hillside. In her petition she charged that after the passengers for Central City had alighted from the car, she went aboard of said train for passage to Hillside, and while on the front platform of the car she was entering, and before she could enter said car, and before the train started to move, she was, by the gross carelessness and negligence of the defendant's agents and servants, hurled and thrown against the end of the car, striking and bruising and severely injuring her arms, side, back and limbs, rendering her sick, and causing her great physical pain and mental anguish. The petition of Beulah Ball, by her next friend, states substantially the same facts, and that she was similarly injured, receiving a severe bruise, which resulted in a large knot upon her head.

By amended petitions, it is specifically alleged that the negligence of the defendant's agents and servants consisted in an unusual and violent moving of the car and train while plaintiffs were attempting to enter it. The answer contained a traverse, and a plea of contributory negligence upon the part of the plaintiffs, which was, in turn, traversed by the reply. The cases having been consolidated, and heard together before a jury,

Mrs. Ball recovered a judgment for $300.00, and Beulah Ball also had a judgment for $200.00; and from those judgments the defendant prosecutes these appeals.

Two grounds only are relied upon by appellant for a reversal; (1) that the trial court erred in giving instructions 1 and 2; and, (2) that the verdicts were the result of passion and prejudice; were not supported by sufficient evidence, or by any evidence, and are excessive.

The first and second instructions complained of read as follows:

"(1) The court instructs the jury that it was the duty of the defendant company to keep its train standing at the platform a sufficient length of time to give the plaintiff, Mrs. Lou Ball, a reasonable opportunity to get on the car with her child, Beulah Ball, and to secure a seat in the car, and if the jury believe from the evidence that the defendant company jerked or suddenly moved its train while she was on the platform of the car with her child in the act of getting aboard the car, without giving her a reasonable opportunity to get on the car, and to get a seat, and the plaintiff, Mrs. Lou Ball, was thereby thrown against the car and injured on her ankle, hip, knee, leg, or back, then and there and in that event, the jury will find for the plaintiff, Mrs. Lou Ball, such a sum as will fairly and reasonably compensate her for any physical or mental suffering thereby caused to her not exceeding one thousand ($1,000.00) dollars. the amount claimed by her; and if the jury believe from the evidence that the plaintiff, Beulah Ball, was thrown against the car by said jerking of the train, if any, and injured about the head, or upon the body, then and in that event the jury will find for Beulah Ball such a sum as will fairly and reasonably compensate her for any mental and physical suffering thereby caused to her not exceeding two thousand ($2,000.00) dollars, the amount claimed by her."

"(2) Unless the jury believe from the evidence that the defendant's train was jerked or suddenly moved while the plaintiff, Lou Ball, and her child were on the platform of the car and before she had been given a reasonable opportunity to get in the car and to secure a seat, the jury will find for the defendant as to both plaintiffs."

Mrs. Ball testified that after the train had come to a full stop, and the flagman had placed his box on the platform, and all the passengers for Central City had left the train, and he had cried, "All aboard," she waited until several passengers had boarded the train ahead of her; and then leading her baby, the appellee Beulah Ball, she started to enter the train and had reached the top step or outside platform of the coach, when the car was suddenly and violently jerked forward, causing her and her child to be thrown against the door of the coach, thereby sustaining the injuries complained of. She says the train was moved or jerked at least five feet forward. Mrs. Ball is corroborated in her testimony concerning the sudden and violent jerking of the car by George Rone, who also says the flagman was compelled to move his box or step at least five feet for the accommodation of other passengers, and that this all occurred as Mrs. Ball was attempting to board the train. Mrs. Margaret Ball, the mother of Mrs. Lou Ball, also corroborates the testimony of her daughter. On the other hand, the flagman, the conductor, and the engineer in charge of the train, all testify that the train was not jerked or moved at all. Mrs. Ball made no complaint of her injury at the time, but made her way into the car, where, according to her testimony, she became and remained unconscious for sometime; and, when she regained consciousness, she found herself seated in the car, with the child in her lap, crying.

Appellant contends that since there was no evidence that either Mrs. Ball or her child was ill or infirm, or that either of them, in any way, needed special attention, appellant was under no duty to hold its train until Mrs. Ball had secured a seat; that the only duty it owed the appellees, was to give them a reasonable opportunity to get aboard the train; and, that instruction No. 1 was erroneous, in that it not only required appellant to keep its train standing a sufficient length of time to give Mrs. Ball a reasonable opportunity to board the car, but also to give her a reasonable time to secure a seat therein.

The rule defining the duty of the carrier to the passenger, in cases like the one under consideration, is this: In ordinary cases the conductor is not required to either see that the passenger has reached a seat, or to delay starting his train until after the passenger is safely within the car; but, as soon as the passenger has fairly

entered the car, the carrier may start without waiting for him to reach a seat, unless there is some special reason for doing so, as in the case of a passenger who is old, feeble, crippled, or in any condition which makes it reasonably apparent to those in charge of the car, that the passenger needs unusual care and precaution for his protection. L. & N. R. R. Co. v. Hale, 102 Ky., 600.; Bennett v. Louisville Railway Co., 122 Ky., 59; Howard v. Louisville Railway Co., 32 Ky. L. R., 309, 105 S. W., 932; Lexington Railway Co. v. Britton, 130 Ky., 676; C. & O. Ry. Co. v. Borders, 140 Ky., 549; and Louisville Railway Co. v. Wilder, 143 Ky., 436.

A different rule prevails where the passenger is injured while boarding the car, and before he safely reaches the platform. In such cases the car should not be started until the passenger has secured a safe footing. Lexington Railway Co. v. Britton, *supra.*

The precise question now raised by the objection to Instruction No. 1, was before this court in the Wilder case, *supra,* where the instructions, in effect, told the jury that if the situation of the plaintiff imposed upon the persons in charge of the car, the duty of exercising more than usual care, the plaintiff was entitled to recover if they started the car before she was seated, thus putting upon the company, as a matter of law, a higher duty and degree of care than should have been imposed. The court held the instruction to be improper, and, in commenting upon the rule there laid down, it said:

"If the situation or condition of appellee required more than usual care on the part of the agents in charge of the car in starting it, and her situation and condition was reasonably apparent to them, then it was their duty before starting the car to have allowed appellee a reasonable opportunity to get seated. Or, to put it in another way, it was for the jury to say (1) whether appellee's condition was such as to require the operators of the car to exercise more than usual care, (2) whether by the exercise of the highest degree of care her condition and situation could have been discovered by or was reasonably apparent to the operators of the car, (3) whether they failed to allow her reasonable opportunity to take a seat in the car before starting it. To entitle appellee to recover it was necessary that all three of these conditions should exist and it was for the jury to say under proper instructions whether they existed or

not. It was as much the province of the jury to pass upon one of these questions of fact as the other, and the existence of each of them was necessary to make out a case for appellee. The operators were not required as a matter of law to hold the car motionless until appellee was seated. They were only required to hold it motionless until she had a reasonable opportunity to be seated. Although the jury might have believed that her situation was known to the operators of the car, and that it demanded unusual care upon their part, yet, if they allowed her reasonable time and opportunity to take a seat before starting the car, and she failed to avail herself of the time and opportunity so allowed, the company would not be liable.''

The court condemned the instruction given in the Wilder case, because it required the company, as a matter of law, to hold the car until the plaintiff had had a reasonable opportunity to get seated, when the question as to whether she was so entitled to have the car remain standing until she had reached her seat, was a question for the jury. In other words, the court held that if the jury should believe, from the evidence, that after the plaintiff got upon the platform with her child in her arms, and attempted to enter the door of the car, the exercise of the highest degree of care for the plaintiff's safety required that the defendant's agents in charge of the car, and controlling its movements, should have allowed her a reasonable opportunity to take her seat in the car before starting it in motion, it was their duty to hold the car until she was seated.

The criticism applied to the instruction given in the Wilder case applies equally to the instruction given in the case at bar; since, in imposing upon the company the absolute duty to keep its train standing at the platform a sufficient length of time to give the plaintiff a reasonable opportunity, not only to get into the car, but to secure a seat in the car, the court in the latter respect, determined, as a matter of law, a question which should have been left to the jury, in any event. Moreover, in that respect, the instruction went further than the petition, which did not rest the ground of recovery upon plaintiff's failure to get a seat.

For the error in the instructions the judgment will have to be reversed, and a new trial ordered.