# Dudley v. Blue Ribbon Lines Corporation.

February 4, 1949.

Diederich & Lycan for appellant.

J. W. McKenzie for appellee.

OPINION OF THE COURT BY JUDGE RFFS—Affirming.

The appellant, Mrs. Virgie Dudley, brought this action against Blue Ribbon Lines Corporation to recover damages in the sum of $10,000 for alleged injuries received by her while a passenger on one of its buses. The Blue Ribbon Lines Corporation operates a bus line in the City of Ashland, and on August 29, 1946, appellant boarded one of its buses at the intersection of Clinton

Street and Blackburn Avenue. She alleged in her peti-
tion that after she boarded the bus and paid her fare and
before she had time to be seated, the driver carelessly.
and negligently started the bus with a sudden jerk
"thereby throwing plaintiff and twisting and dislocat-
ing her right knee." Upon the trial of the case the jury
returned a verdict for the defendant, and the plaintiff
appeals. It is argued that the verdict is contrary to the
law and the evidence, and that the court erred in giving
instructions Nos. 4 and 5.

The only witnesses who testified as to the move-
ment of the bus were appellant and Melvin Baer, the
driver of the bus. Mrs. Dudley testified that after she got
on the bus and deposited her fare in the fare box and
started back through the bus to take a seat, the driver
started the bus with a sudden jerk. She did not fall and
was not thrown against the seats or any other part of
the bus, but she claimed that her leg was twisted and
that immediately she felt a severe pain in her knee. In a
letter written to appellee on September 9, 1946, she de-
scribed the accident as folows: "The injury occurred on
Thursday, August 29, 1946, on the 12 Noon Bus leaving
town and coming through Pollard. I got on the bus at
12:30 P.M. at Blackburn Avenue near Clinton Street,
and the driver started out before I got seated. In trying
to sit down I twisted my knee and disjointed the bone
and pulled the ligaments loose. I said out loud, 'I believe
I dislocated my leg' and got off the bus right away at
Blackburn Avenue and 13th Street. The driver of the
bus offered no assistance nor did he say one word, and
I could hardly walk off the bus."

She left the bus after riding one square and went
to the office of Dr. Harry J. Stone, who found that her
right knee was tender, swollen and red. He made a thor-
ough examination of her knee, and found there was no
bone injury. Melvin Baer, driver of the bus, testified
that he knew Mrs. Dudley and remembered the occasion
when she got on and off the bus on August 29, 1946. He
started the bus slowly and without a jerk. Mrs. Dudley
did not complain to him concerning any injury when
she left the bus, and consequently, he did not get the
names of any of the passengers who were on the bus
at the time. It will be noted that the testimony of the

two witnesses who testified on the crucial issue in the case is in direct conflict. The evidence is amply sufficient to sustain the verdict of the jury.

Appellant complains because the court gave instruction No. 4, which reads: "It was not the duty of the driver of Blue Ribon Lines bus which plaintiff boarded to have the bus remain still or standing until the plaintiff was seated in said bus, and unless you believe from the evidence that the driver in charge of said bus failed to exercise that degree of care which is imposed upon him as set out in Instruction No. 1 and by reason of such failure, if any, the plaintiff was injured thereby, the law is for the defendant and you should so find."

The same instruction has been approved in cases where the facts were similar to the facts in the present case. Bennett v. Louisville Railway Company, 122 Ky. 59, 90 S.W. 1052, 4 L.R.A.,N.S., 558, 121 Am. St.Rep. 453; Howard v. Louisville Railway Company, Ky. 105 S.W 932, 934. In the Howard case the court, commenting on the criticized instruction, said: "This instruction is taken from Bennett v. Louisville Railway Company (122 Ky. 59), 90 S.W. 1052, 28 Ky. Law Rep. 998, 4 L.R.A., N.S., 558, (121 Am. St. Rep. 453). In that case the plaintiff, Bennett, alleged, in substance, that the motorman stopped the car for her, and as she entered the door of the car and was in the act of taking a seat the motorman negligently turned on the current and started the car with a sudden and unusual jerk, by which she was thrown with great force and violence against the edge or end of a seat. The striking similarity between the facts of that case and this will be noticed at a glance, and, the instruction being the same as the one approved in the Bennett case, the court properly submitted it as presenting a correct statement of the law upon the point under consideration."

A carrier is not required, as a matter of law, to keep a train, bus or street-car standing until a passenger has had a reasonable opportunity to reach a seat after boarding the car. Louisville & N. R. Co. v. Gaines, 152 Ky. 255, 153 S.W. 2166; Illinois Central Railroad Company v. Ball, 150 Ky. 531, 150 S.W. 668.

Instruction No. 5 was on contributory negligence.

Appellant does not criticize the form of the instruction, but argues that it should not have been given since there was no evidence of negligence on her part. The bus upon which appellant became a passenger was comparatively new and had the most modern type of equipment. All of the seats were equipped with hand holds across their tops which were provided for the safety of the passengers. There is no proof that appellant used the hand holds, and it might be inferred from the evidence that she failed, under the circumstances, to exercise ordinary care for her own safety. The giving of an instruction on contributory negligence was complained of in Howard v. Louisville Railway Company, supra, and it was held that the instruction could not, in any state of case, have been prejudicial. Here, however, there was some evidence from which contributory negligence could be inferred.

The judgment is affirmed.